CARTER, *Appellant*, v. FOSTER *et al.*

Division One, July 6, 1898.

1. **Contract**: RULES OF CONSTRUCTION: POSITION OF PARTIES:    In con-
struing a deed or other written instrument, whose terms are suscep-
tible of more than one meaning, it is proper to place the court in the
position of the parties, and to show what was subsequently done by
them indicating their understanding of the contract.

2. ———: ———: ———: EXCEPTIONS FOR STREETS:    EVIDENCE:    A
deed of trust conveyed a seventy-six foot lot "excepting that part
thereof taken for Holmes and 23rd street."    At that time a proceeding
had been begun to condemn thirty feet of the lot for street purposes
as a part of twenty-third street, which proceeding was afterward
abandoned.    Shortly after the execution of the deed of trust the
grantor therein executed a contract, which was duly recorded, by
which he agreed that all damages awarded for the taking of the street
by the city should be paid to the *cestui que trust* named in the deed
of trust, but the grantor later conveyed the entire lot to plaintiff sub-
ject to the deed of trust, and the defendant was the purchaser of the
entire lot at the sale under the deed of trust.    *Held*, that the title to
the thirty foot strip was not reserved by the deed of trust to the
grantor, did not remain in him, but passed at the foreclosure sale to
the purchaser.    *Held*, also, that, while the contract to the effect that
the damages awarded against the city for appropriating the thirty foot
strip for city purposes should belong to the *cestui que trust*, can not
in anywise be said to impart to the deed of trust a meaning that is
not contained in its words, yet it is proper evidence to show what
was intended by the parties by the exception named in the convey-
ance.

*Appeal from Jackson Circuit Court.*—HON. CHARLES L.
DOBSON, Judge.

AFFIRMED.

*Kinley, Carskadon & Kinley* for appellant.

(1) While it is true, as a matter of fact, that no part of the real estate is mentioned in the ordinance cited in the statement of facts, yet the ordinance was passed in terms taking and appropriating to public use, for the opening of said Twenty-third street, the real estate described in petition and sought to be recovered in this action. The real estate was appropriated, and in law potentially taken. Art. VII, Kansas City Charter, secs. 1 to 5. (2) The exception made in the deed of trust was sufficient to retain the title to the land in suit in the grantor therein, James F. Bayless. It is manifest that the parties to the deed recognized the existence of the ordinance before mentioned. It is apparent that they thought the effect of the ordinance was a then accomplished taking of that land, and they meant to except it from the operation of said deed for that reason. (3) It is a canon of construction that when such paper is in any way or to any extent indefinite or uncertain, the court must and will seek to find the intentions of the parties thereto, and will even attempt to place itself in the position of the parties and look the whole field over from their standpoint and then give effect to the deed according to the intent and purposes of the parties thereto. 3 Wash. on Real Prop. [5 Ed.], secs. 24 and 57; *Cravens v. Pettit*, 16 Mo. 210; *Bollinger Co. v. McDowell*, 99 Mo. 632; *Hammond v. Johnston*, 93 Mo. 198. (4) The exception out of the tract of land granted in the deed of trust, being sufficient in terms, in effect, left the title to the land sued for in this case as fully as if it had been wholly unmentioned or embraced in any of the phraseology contained in said deed of trust, or as fully as if the grantee therein had reconveyed the same back to the said Bayless by a good and sufficient deed. *Snoddy v. Bolen*, 122 Mo. 479;

*Kester v. Reeser*, 98 Pa. St. 1; *Mayor, etc., v. Railroad*, 69 Hun. 324; *Umchied v. Scholz*, 16 S. W. Rep. 1065; *Munn v. Worrall*, 53 N. Y. 44; *Langdon v. Mayor, etc.*, 6 Abbott's New Cases, 314. (5) The contract between said Bayless and said Hicks, by which said Bayless undertook to assign, etc., to said Hicks, was not intended to and hence did not convey any interest in said real estate to said Hicks. If such had been the intention, it was wholly insufficient for that purpose. If it should be held of that intent and purpose, and sufficient in and of itself so far as its terms and provisions are involved, then it was insufficient to do so because it was made without consideration and is, therefore, absolutely void. Even if said real estate had been condemned and the money paid therefor by said city, it would not have gone either to the said Hicks or said Havemeyer, and would have gone to those claiming the real estate at the time under the conveyances made by said Bayless and his grantees. *Kiebler v. Holmes*, 58 Mo. App. 119; *Fisher v. Laack*, 45 N. W. Rep. 104; *Babcock v. Latimer*, 30 Minn. 417.

*Brumback & Brumback* for respondents.

(1) This being a case at law and not in equity, and the question of what the parties meant by the phrase "that part thereof taken for 23rd street," having upon competent evidence, been found by the court favorably to the construction contended for by respondents, such finding is now conclusive on this court. *Irwin v. Woodmansee*, 104 Mo. 403; *Skinker v. Haagsma*, 99 Mo. 213. (2) Where the words of an exception in a deed are doubtful, the doubt should be resolved in favor of the grantee. This does not mean that the court is to twist the meanings of words, or distort the well ascertained intention of the parties, but only

that if, taking the words of the conveyance and the oral evidence together, the court is still in doubt as to what the parties meant it will so construe the deed as to operate most favorably to the grantee and most strongly against the grantor. *Bray v. Conrad*, 101 Mo. 331; *Kuhn v. Farnsworth*, 69 Me. 404; *Jackson v. Hudson*, 3 Johns (N. Y.) 374; *Blackman v. Striker*, 142 N. Y. 555. (3) Either an exception or a reservation may be created by the words of a deed accordingly as the intention is ascertained from the terms of the deed and from the circumstances surrounding the transaction. It is entirely a matter of intention and the words "except" or "reserve" are very often construed as being used interchangeably. Wash. on Real Prop. [ 5 Ed.], sec. 57; Jones on Real Prop., secs. 503, 505, 506; *Kister v. Reeser*, 98 Pa. St. 1; *Gould v. Howe*, 131 Ill. 490. (4) The exception describes only that part "taken" for Twenty-third street. The thirty feet can not in any sense be said to have ever been "taken" and, therefore, does not come within the exception. Constitution 1875, art. II, sec. 21; *Kiebler v. Holmes*, 58 Mo. App. 119; *Mayor v. New York*, 3 N. Y. Sup. 533. (5) It was the intention of the parties to except only the right which the city, by the passage of the ordinance, had acquired to take for public use an easement in the thirty feet. *Brown v. Spillman*, 155 U. S. 665; *Kuhn v. Farnsworth*, 69 Me. 404; *Hays v. Ashew*, 5 John Law (N. C.) 63; *Blackman v. Striker*, 142 N. Y. 555; *Capron v. Kingman*, 64 N. H. 571; *Gould v. Howe*, 131 Ill. 490; *Winston v. Johnson*, 42 Minn. 398; *Elliot v. Small*, 35 Minn. 396; Kansas City Charter 1875, art. VII, sec. 5; Laws 1875, p. 246.

ROBINSON, J.—This is an action of ejectment instituted in the Jackson county circuit court, to recover a strip of land thirty feet wide from north to south, and

one hundred and forty-four feet long from east to west, fronting thirty feet on the west side of Holmes street. This thirty foot strip is the north portion of a larger strip fronting seventy-six feet on the west side of Holmes street in Kansas City. The suit was originally begun against the defendant Foster alone, J. C. Havemeyer being, on his application, made party defendant. The petition is in the usual form, alleging ouster on December 9, 1894. The defendant Foster answered, admitting possession of the premises, but denying all other allegations in the petition contained. The answer of defendant Havemeyer set up that Foster was in possession of the premises in question, as his tenant, and denied all other allegations of the petition. There was no reply. J. F. Bayless is the common source of title. On the sixteenth day of February, 1889, said Bayless, being the owner of the entire seventy-six foot strip, executed his deed of trust to Samuel Foster, trustee for C. R. Hicks, to secure a note for $5,000, payable in three years after date thereof to said Hicks, together with six interest coupon notes. The deed of trust described the entire seventy-six foot strip by metes and bounds so as to include the thirty feet in controversy, and at the end of such description the following superadded words appeared, "Being the land conveyed by W. Ewing Hall and wife to Catherine McCrystle Williams by deed dated October 14th, 1880, and recorded in Book B 42, page 512, excepting that part thereof taken for Holmes and 23rd streets." At the time the Bayless deed of trust was executed, a proceeding begun by the city of Kansas City to condemn the thirty foot strip, for a part of Twenty-third street, was pending, but afterward and before the deed of trust was foreclosed, the condemnation proceedings were abandoned, whereby the right of the city to condemn the thirty

foot strip was forfeited, so that the strip in question never was taken for street purposes.

By section 5, article VII, of the city charter of Kansas City of 1875, it is provided that if a verdict of the jury, when reported to the Common Council by the Mayor, shall not be confirmed, etc., within sixty days after the proceedings, it shall be wholly void. It appears from the record, that on February 9, 1889, five days before the deed of trust was executed, the city of Kansas passed an ordinance, providing that the thirty foot strip should be taken for Twenty-third street, and directing that proceedings be had to assess the damages and benefits. Process was served on J. B. Boyd, who owned the seventy-six foot strip before Bayless acquired it. On July 18, following, a jury to assess damages and benefits was impaneled, and on September 10 the jury filed their verdict. On September 16, the verdict was submitted to the city council and on the same day an ordinance was introduced to confirm the verdict. This ordinance, however, was never passed, and consequently the verdict was never confirmed. No further proceeding seems to have been taken under the ordinance, and by the charter all proceeding as well as the ordinance itself were vitiated by reason of the failure to confirm the verdict within the time provided in the charter.

The application for the loan secured by the deed of trust was made by Boyd, who conveyed the premises to Bayless before the loan transaction was finally consummated. Thereupon Bayless signed the deed of trust, the loan, however, being made in pursuance of the application made by Boyd. In this application it is stated in substance that he (Boyd) offered as security for the loan, "76 by 144 feet in northwest quarter of the southeast quarter of section 8, in township 49 of range 33."

Shortly after the date of the deed of trust, Bayless executed an agreement, which was afterward recorded, by the terms of which it was agreed that "any and all sums that may be awarded as the damage taken for the north thirty feet of said property, in the opening and establishing of Twenty-third street, under ordinance heretofore passed by said City of Kansas, be paid to said Hicks, or to his assigns of said notes and interest coupons, the same however to be applied in part payment thereof." The agreement provided, as the reason for directing the payment of said damages, that: "Whereas, James F. Bayless of Douglass county, Kansas, is the owner in fee of the following described real estate in the county of Jackson, and State of Missouri, to wit:" (Here follows the descriptions of the whole seventy-six feet by metes and bounds), "excepting, however, a strip taken from the east end thereof by the city of Kansas City, Mo., in the widening and opening of Holmes street, *excepting further the north thirty feet thereof is subject to an ordinance which has been enacted by said city of Kansas, providing for the opening and establishing of 23rd street;* and whereas said James F. Bayless did heretofore borrow of Charles H. Hicks of Kansas City, Missouri, the sum of $5,000 for which he the said Bayless and Mary R. Bayless his wife executed and delivered to said Hicks one coupon note. . . . . . . . Said coupon note and interest coupons being secured on the above described real estate with the exception as stated, as evidenced by deed of trust of record in the office of the recorder of deeds of Jackson county, Missouri, at Kansas City, dated February 14th, 1889, and executed by the said James F. Bayless and Mary R. Bayless, his wife, to Samuel Foster trustee for said Charles Hicks. Now, therefore, in consideration of the premises, I the said James P. Bayless." (Here follows agreement for paying condemnation money to

Hicks or his assigns as above stated). On May 15, 1889, Bayless by deed in form a warranty, conveyed to F. W. McCabe the entire seventy-six feet, describing it by metes and bounds, "excepting, however, so much of said tract as may have been taken from the east end thereof, for and as a part of Holmes street, subject to the Bayless deed of trust." On July 16, 1889, F. W. McCabe conveyed to J. E. McCabe the entire seventy-six feet, describing it by metes and bounds, without, however, mentioning or referring to either Holmes or Twenty-third streets. This deed was subject to an incumbrance of $5,300 and any interest which may have accumulated thereon. On the twenty-fifth of August following, J. E. McCabe conveyed by a warranty deed to M. J. Richards, the entire seventy-six feet by metes and bounds not mentioning Holmes or Twenty-third street. This was also subject to the Bayless deed of trust. Default having been made in the interest coupons maturing in August, 1891, the trustee named in the deed of trust on September 26, 1891, sold the entire seventy-six feet in accordance with the power contained in the deed of trust, to the defendant Havemeyer, and delivered to him a trustee's deed therefor in usual form, who thereupon took possession of the whole seventy-six feet, renting it to various tenants as one parcel. On the fifteenth day of April, 1893, said Richards by quit-claim deed for the recited consideration of $50 conveyed to plaintiff the thirty foot strip in controversy, describing same by metes and bounds. This deed also recited that Richards assigned to plaintiff all damages awarded or that might be awarded for taking said tract for opening Twenty-third street. The evidence shows that the entire seventy-six feet was fenced as one parcel, had been so fenced and used for eight or ten years, and the house situated on

the whole tract extended over on the thirty foot strip four or five feet.

The circuit court, in its special finding of the facts made at the instance of the plaintiff, found that it was the intention of the parties to the deed of trust under consideration, to except from the operation thereof only such right or easements as the city had acquired or might acquire for the street purposes, and thereupon refused a peremtory instruction for the plaintiff and gave an instruction in the nature of a demurrer to the evidence for defendant and rendered judgment accordingly in favor of defendants, from which the plaintiff duly appeals to this court.

The only question presented by the record for our determination is as to the proper construction of the above quoted clause in the Bayless deed of trust. The plaintiff contends that the true meaning of the description contained in the deed of trust, is that the disputed strip had been taken for Twenty-third street, and therefore the fee simple title thereto was excepted from the operation of the deed of trust and did not pass thereby, but remained in Bayless who conveyed the same to F. W. McCabe, under whom the plaintiff claims title, long before Havemeyer acquired any claim whatever thereto. The defendants on the other hand contend that the strip in dispute never had been "taken for 23rd street" within the meaning of the clause above mentioned, and that even if it should be held that the strip in question had been taken for street purposes, within the meaning of those words, yet the parties to said deed by the words "that part thereof taken for 23rd street," referred only to the existing right which Kansas City had acquired, by the passage of the ordinance, to take the strip in dispute for Twenty-third street, that the fee of the thirty foot strip passed to the trustee named in the deed of trust,

subject only to this right of the city, and that, insomuch as the right was afterward extinguished, the whole title remained in the trustee, and the trustee's deed passed such title to defendant Havemeyer.

It is a well settled canon of construction, that in construing a deed or any other written instrument, whose terms are susceptible of more than one meaning it is proper to place the court in the position of the parties thereto at the time the instrument was executed, and to show what was subsequently done by the parties themselves, in carrying out the contract, as showing their understanding of its provisions. *Bollinger Co. v. McDowell*, 99 Mo. 632; *Hammond v. Johnston*, 93 Mo. 198; *Edwards v. Smith*, 63 Mo. 119; *Ellis v. Harrison*, 104 Mo. 270; *Knight v. New England Worsted Co.*, 2 Cush. (Mass.) 271.

The rule is thus stated in the latter case: "In expounding a written contract, although parol evidence is not admissible to prove that other terms were agreed to which are not expressed in the writing or that the parties had other intentions than those to be inferred from it, yet it is competent to offer parol evidence to prove facts and circumstances respecting the relations of the parties, and the nature, quality and condition of the real and personal property, which constitute the subject-matter respecting which it is made. It is also competent to prove by parol evidence, indeed it can hardly be done by any other, the acts of the parties, at and subsequent to the date of the contract, as a means of showing their own understanding of its terms."

The words of the exception, in this deed of trust, are "excepting that part thereof taken for Holmes and 23rd street." Five days before the deed of trust was executed the city of Kansas City passed an ordinance providing that the thirty foot strip in controversy should be taken for Twenty-third street and directing

that proceedings should be had to assess the value of the lands to be taken and the benefits accruing to lands not taken. No further proceedings, however, seem to have been taken under said ordinances, and, as before observed, by the charter of Kansas City all proceeding with respect thereto, including the ordinance itself, became null and void for want of confirmation of the verdict of the jury within the time limited. Clearly then, it can not be said that the strip in controversy was taken by the passage of the ordinance without anything more having been done. Section 21, article II of the Constitution of Missouri in defining when land shall be deemed to have been taken for public uses, after declaring that private property shall not be taken or damaged for public uses without just compensation, and providing for the manner of ascertaining the amount of compensation, says: "And until the same shall be paid to the owner or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested."

In *Kiebler v. Holmes*, 58 Mo. App. 119, Kiebler and Freeman conveyed a lot on East Ninth street in Kansas City to Mrs. Wright by warranty deed. At the time the deed was made an ordinance had been passed to take five feet of side lot, but nothing had been done thereunder. Afterward, damages were assessed by the Mayor's jury, and both Kiebler and Mrs. Wright, claimed the same. GILL, J., who wrote the opinion of the court said: "The mere passage of the ordinance of February 27th, 1887 (an ordinance like the one in question), did not amount to an appropriation of the real estate, nor did it commit any damage to which the then owner was entitled. The city did not by the passage of the ordinance take the property. This was only the initial step looking to an

appropriation or taking in the future. After passing
such ordinance and even after the proceedings were
begun before the mayor to assess damages and benefits,
the city might have abandoned the condemnation,
because too expensive or for other reasons."

*In re Board of Street Opening*, 22 N. Y. Sup. 1021,
after describing a tract by metes and bounds, the deed
continued, "Excepting therefrom, however, so much
of said lots as has been taken for the opening of One
Hundred and Twenty-seventh street and the widening
of Manhattan street." There, as here, a part of said
lots had been taken for Manhattan street, and prior to
the deed a street commissioner had filed a map desig-
nating certain portions of the lots to be taken for One
Hundred and Twenty-seventh street; the filing of the
map in that case being a step corresponding to the
passing of the ordinance in the case at bar. In that
case, as in this, the proceedings to assess damages for
the part to be taken for said street was taken after the
deed was made. Upon the termination of the con-
demnation proceeding, both the grantor and grantee
claimed the damages so assessed, and the merits of the
controversy involved the question as to whether the
land taken for One Hundred and Twenty-seventh
street passed to the grantee under the deed with the
excepting clause as above indicated. On account of
the importance of the case and the similarity in many
respects to the case at bar, we will quote from the
opinion of that court on this question. The court
said: "The court below held that it was excluded
from the conveyance and remained vested in the heirs
at law of Thomas Land. We think, however, that it
was not the intention of the parties to that deed that
any portion of the two lots, Nos. 104 and 106 on the
Loss map, to which they still had title, should be ex-
cepted from the conveyance; that all that was intended

to be excepted was those portions of the lots to which they had lost title by reason of the proceedings of the city in actually taking the land for street purposes. The language used clearly implies that the exception was to relate only to so much of the lots as had been, before the execution of the conveyance, actually taken for the opening of these streets, and not to any portion of the property which might in the future be taken for the opening of the streets in question. There was nothing to show that the grantors had any intention to reserve these small pieces of land that would in the future be necessary to be taken for 127th street. So far as it appears, they owned no property in the vicinity to which these pieces of land could be useful, and in the face of the clear language used, we fail to see how any other intention could be implied.''

In the cases of *Blackman v. Striker*, 142 N. Y. 555; *Brown v. Spilman*, 155 U. S. 665; *Winston v. Johnson*, 45 N. W. Rep. 958, exceptions similar to the clause in question were under discussion, and the courts, construing their meaning, gave effect to the intention of the parties very much as was done in the 22 N. Y. Supreme Court and by the circuit court in the case at bar. The decision *In re Board of Street Opening*, *supra*, was afterward affirmed on appeal by the Court of Appeals of New York. This decision was rendered by the same court that decided *Munn v. Worrall*, 53 N. Y. 44, cited and so much relied upon by counsel for plaintiff, but is clearly distinguishable from it. In the latter case the land sought to be excepted from the deed, exactly fulfilled the call in the deed. It had already been taken, paid for and occupied by the public. A careful reading of the opinion will show that the court's reason for holding as it did, was that the words of the exception could not possibly refer to the right of the city. The words of the exception were

"saving and excepting from the *premises* hereby conveyed all, and so much, and such part and parts thereof as has or have been lawfully taken for a public road or roads." It is quite different language from that used in the deed here under consideration. Besides, there was no evidence in that case, as to the intention of the parties, consequently the court held that the word "premises," which is not used in this case, in its technical signification, together with the connection in which it was used, must be held to mean the tract of land described in the deed and not the estate or interest of the grantor. The present case, however, does not present the peculiar feature of the exception from the *"premises"* as in the *Munn* case. The same distinction is observed in *Langdon v. Mayor*, 6 Abbott's New Cases (N. Y.) 314, relied upon by the plaintiff. There the words of the deed were, "saving and reserving *out of the several water lots and soil under the water"* etc. In construing these words the court said "it is not the streets which are saved and reserved, but *the land under water upon which the streets were to be built."*

In this connection it will be observed that under the decision of this State the city only acquires an easement or use of the streets limited strictly to the public use. *Belcher Sugar Ref. Co. v. St. Louis Grain Elevator Co.*, 82 Mo. 121; *Snoddy v. Bolen*, 122 Mo. 479. Besides in the *Langdon* case the city was the grantor, and even if the exception had been held to refer to such interest as the city ordinarily had in its streets, yet, under the laws of New York, the city usually acquired the entire fee and the language would naturally refer to the fee simple title. The same remarks are alike applicable to *Mayor v. Railroad*, 69 Hunn 324, cited by plaintiff.

The especial and particular right of the city to appropriate the strip in controversy, as distinguished

from its general power of eminent domain, might be said to have sprung into existence upon the passage of the ordinance in question. To be sure the general right of the city to condemn property for public use existed under its charter, but the especial and particular right to appropriate this identical parcel of land arose out of the ordinance itself. This was a valid and subsisting right existing at the time of the execution of the deed of trust. It was this right, and no other, upon which the exception was intended to operate. In the light of the evidence, giving to the words of that clause of the deed of trust relating to the exception, the meaning which all the surrounding circumstances shows to be the obvious one, the language used clearly implies that it was the intention of the parties that the exception was to relate only to the right which the city by the passage of the ordinance had acquired to take the strip in controversy for Twenty-third street. There is nothing in the deed under consideration, which warrants the construction contended for by plaintiff. The evidential tendency by Boyd, application upon which the loan in question was made, was to show that the parties intended to give as security for the money borrowed the entire seventy-six foot strip of land, but as they understood the matter, the seventy-six feet then consisted of the estate remaining in the land, together with the right to receive the money from the city, and in order to effectuate their intentions, the right to which the city had to acquire the strip in question was excepted from the operation of the deed of trust, and Bayless by a separate contract transferred to Hicks merely the proceeds of such excepted rights, thereby more effectually carrying out the original intention of the parties. The contract in question, to that extent becomes important as tending to show the intentions of the parties. While

the contract can not in any wise be said to import to the deed of trust a meaning that is not contained in its words, it tends most conclusively to show what was intended by the parties by the exception contained therein. The contract in substance states that the debt therein referred to was secured by the land, with the exceptions as stated. The exceptions in question appeared in the first part of the contract, manifestly then it was these exceptions that Bayless refers to when he states that the deed in question is secured by the entire seventy-six foot tract of land, with the exceptions, as stated. When we come to examine the opening paragraphs of the contract, stating the exceptions, we found the following significant words employed: "Excepting further the thirty feet therefore is subject to an ordinance which has been enacted by the said city of Kansas providing for the opening and establishing of 23rd street." This is equivalent to saying, Bayless meant by the exception in question, that the land covered by the deed of trust was subject to the then existing right of the city of Kansas City to take the thirty foot strip in controversy for the opening of Twenty-third street and nothing more, and this is precisely what the circuit court found was the true meaning of the deed of trust.

Another fact that probably had much influence upon the court in determining the question as to the intention of the parties in making and accepting the deed of trust, is, that the seventy-six foot strip had always been used as one lot and that the dwelling as it then stood upon the ground was partly on the thirty foot strip in controversy and partly on the remaining forty-six feet, six feet of the house standing upon the strip for which plaintiff contends. It would have been so unusual a transaction for one to have offered as security for a loan, a strip of ground so divided as to cut

in two the rooms of a dwelling house, owned by the borrower, and so unlike the business methods pursued by the money lender to have accepted it, in that condition, when a foreclosure on his security would necessarily result in its permanent impairment, that a court might well be justified in determining that such was not the intention of the parties, when the language of the deed as to what was intended was of doubtful or uncertain import.

The finding of the trial court has ample sanction in the facts developed. Its judgment is therefore affirmed. All concur.