John S. Kellogg, Plaintiff in Error, *v.* Joseph Malin, Defendant in Error.

1. *Lands — Railroad — Platte county—Charter — Title to lands of road, etc.* —Section 8 of the act chartering Platte County Railroad, notwithstanding the language therein employed, did not contemplate the investiture of a technical fee-simple title in that road, of land condemned. Nothing more than an easement passed to the railroad under that act. And the grantor of land, a portion of which had been vested in that road by virtue of statutory condemnation and decree had, prior to the date of the deed, would not be liable to the grantee on his covenant of seizin for the land so appropriated.

2. *Lands — Railroad — Title to — Easement.* — The occupancy of land, under proceedings for condemnation, by a railroad company, constitutes merely an easement thereon, and not an ownership in fee simple.

3. *Lands, occupancy of by railroads — Encumbrances, covenant against.* — The occupancy of land by a railroad track is such an encumbrance thereon as would render the grantor liable on his covenant against encumbrances. And his liability is not discharged by the fact that the grantee, at the date of the deed, was aware of the existence of the encumbrance.

*Error to Buchanan Circuit Court.*

*H. K. White*, for plaintiff in error.

I. The suit was correctly brought upon the covenant of seizin, and not upon the covenant against encumbrances. Not only does the demurrer admit the vesting of the fee simple in the Platte County Railroad, but a reference to the charter of the company will show that the power of condemnation of the fee was granted to the company, and that company was of unlimited duration. (Sess. Acts 1853, p. 355, §§ 1, 9.)

The Legislature, in exercising the right of eminent domain or in granting its exercise, has the right to take the fee simple as well as a less interest, and such fee is not a base fee or a conditional fee, nor would the fee revert to respondent or his grantees, upon abandonment by the company. (De Varaigne v. Fox, 2 Blatchf. 96–99 ; Heyward v. Mayor, etc., 7 N. Y. 314 ; Rexford v. Knight, 11 N. Y. 308 ; Nicoll v. N. Y. & Erie R.R. Co., 12 N. Y. 121 ; Beekman v. Saratoga R.R. Co., 3 Paige Ch. 46.)

II. The breach assigned is one for which an action will lie. The respondent, in effect, covenanted that the railroad company was a trespasser ; and notice of its rights by open, notorious possession,

or otherwise, will not avail defendant when sued upon his covenants. (Beach v. Miller, 51 Ill. 206 ; Barlow v. McKinley, 24 Iowa, 69 ; Vaughn v. Stuzaker, 16 Ind. 338 ; Harlow v. Thomas, 15 Pick. 66–69 ; Kellogg v. Ingersoll, 2 Mass. 97; Herrick v. Moore, 19 Me. 313 ; Peters v. Grubb, 21 Penn. 455 ; Russ v. Steele, 40 Verm. 310 ; Butler v. Gale, 27 Verm. 739 ; Hubbard v. Norton, 10 Conn. 431 ; Rawle Cov. 19, note.)

*Doniphan & Vories*, for defendant in error.

I. If any action would lie in this case, it should be an action upon the breach of the covenant against encumbrances. The condemnation of lands for railroad purposes, under our statute, although it may be said in some of the railroad charters that the company shall receive the land in fee, can only give the railroad company an easement on the land for the purpose of construction and use of the railroad. The ultimate fee in such case must remain in the owner of the remainder of the land. The railroad company can only take the strip of land for its road by the right of eminent domain. This must always be exercised for a public purpose. A citizen can only be deprived of his property by the State for a public purpose, and when the land in the case before us ceases to be used for a public purpose, it must, in the nature of things, be re-invested in the original owner. If this were not the case, the whole act of the Legislature authorizing the taking of lands would be unconstitutional and void. The taking of private property for private use is as much prohibited by the constitution as if it was so stated in terms. (Wells v. City of Weston, 22 Mo. 384 ; Taylor v. Porter, 4 Hill, N. Y., 144 *et seq.*) In condemning lands for railroad purposes (although the statute may say the land is to be taken in fee), the commissioners are bound to take into consideration, in deciding the price to be paid, the advantages as well as the disadvantages of the railroad to the land. (See R.R. Laws of Mo. 52, § 8.) In this way, if the commissioners should conclude that the railroad would be as much advantage to the owner as the value of the land taken, and give him nothing, and the court confirm the judgment of the commissioners, and thus pay the man for his land in advantage, and then the road be

abandoned by the railroad company, and the lands be converted to uses detrimental to the interests of the owner of the land, what court could be found to uphold this artifice, by which a man is deprived of his land against his will, and for no consideration whatever, either real or imaginary? In the language of Judge Redfield, cited by plaintiff, "it sounds sufficiently absurd to startle the most desperate reformer." But the charter of the company does not vest the land in fee. It is true the first section of the act authorizes the company to hold land in fee; but the eighth section, which authorizes the company to take land by the right of eminent domain, and against the will of the owner, only authorizes the right of way to be taken — nothing but the right of way being named in said section. Hence, in the nature of things, nothing could have been acquired by virtue of the decree of the Platte Circuit Court but the right of way, or an easement over the land; and if the decree attempted to do more than that, it was in that particular void.

II. The existence of a railroad or other public road, on lands conveyed with covenants of seizin, does not constitute a breach of the covenant. (Whitebeck v. Cook, 15 Johns. 488 *et seq.;* Washb. Easements, 68, 76; Jones v. Jenkins, 2 Law Reg., N. S., No. 1; Lampman v. Milks, 21 N. Y. 505; Peterson v. Arthurs, 9 Watts, 152.)

WAGNER, Judge, delivered the opinion of the court.

Plaintiff brought suit against defendant, upon his covenant of seizin contained in a deed conveying certain real estate situated in Platte county. The breach assigned was that at the time of the execution and delivery of the deed the defendant was not seized in fee simple of a strip of land 100 feet wide running through the tract conveyed, but that the fee in such strip was then vested in the Platte County Railroad, by virtue of a decree rendered in the Circuit Court previous to the execution and delivery of defendant's deed, of which the company, at all times since the delivery of the deed, had held exclusive possession.

To this petition the defendant demurred, and assigned as reasons therefor that the petition did not state facts sufficient to

constitute a cause of action, because "the location and use of a railroad over said lands in the petition named was and is a public, notorious act or fact, of which plaintiff was bound to take notice, and of which he was presumed to have had full notice; and all such notorious physical facts were to be taken into consideration in construing the deed and warranty therein, and were not covered by said warranty and were not in law a breach thereof."

The court sustained the demurrer and dismissed the petition, whereupon the plaintiff brought error.

The first question is whether the railroad, by its proceedings for condemnation which resulted in the decree of the court, became invested with a fee-simple title in the strip of land, or whether it acquired a mere easement. It is well settled that the covenant of seizin is not broken by the existence of easements or encumbrances which do not strike at the technical seizin of the purchaser. Therefore the existence of a highway over part of the land conveyed is no breach of this covenant, since it has been firmly and consistently established that, although the public may have the right of passage over the way, the freehold technically remains in the owner of the soil. (Rawle Cov., 3d ed., 51; Goodtitle v. Alker, 1 Burr. 133; Cortelyou v. Van Brundt, 2 Johns. 357; Jackson v. Hathaway, 15 Johns. 449; Lewis v. Jones, 1 Barr, 336; Peck v. Smith, 1 Conn. 103.)

By the first section of the act chartering the Platte County Railroad Company, power is given the company to take, hold, use and enjoy the fee simple or other title in and to any real estate. The eighth section provides that where the owner of the land through which such road shall run shall refuse to relinquish the right of way to the road, the facts shall be stated to the Circuit Court, and the judge shall appoint three disinterested citizens to view the land, who shall take into consideration the value of the land, and the advantages and disadvantages of the road to the same, and report what damages will be done to the land. And the ninth section declares that if no valid objection be made to the report, the court shall enter judgment in favor of the owner, against the company, for the amount of damages assessed, and shall make an order vesting in the company the fee-simple title to

the land.   (R.R. Laws of Mo. 51, 52.)   It is true that in speaking of the title which the company acquire, the Legislature here uses the term " fee simple ; " but did it contemplate a fee simple according to the technical legal meaning of that term ?

That a fee simple may be taken and acquired through the exercise of the power of eminent domain may be conceded.   But that, I apprehend, would be where an absolute and unconditional price was paid for the property.   In determining the consideration to be paid by these roads for the right of way, the benefits and advantages accruing to the owner are taken into the calculation. The benefits and advantages, then, are considered as forming part of the purchase-money.

But suppose the road, after it is started, ceases to exist, and its operation is abandoned, will the land revert back to the owner, or may the road keep and dispose of it for a purpose entirely different from that had in view when it was commenced ?   It seems to me there can be but one answer to this question.   There might be cases where the commissioners and the court would not award the proprietor anything more than nominal damages, believing that the benefits would be greater than the value of the land ; and in such a case, if the road should cease or be abandoned, the owner would be deprived of his estate without any compensation. In the matter of highways, where lands have been taken and appropriated in this way, it has never been held that anything more than an easement passed by the condemnation and the payment of the amount of damages assessed.

The use is vested in the public, but the reversionary title still continues in the owner of the soil.   In my opinion, notwithstanding the language used, nothing more than an easement passed to the road, giving it perpetual and continuous title so long as it used the land for the purpose for which it was taken, but, when that use was abandoned, then it would revert back to the owner of the premises.

We do not think, then, there was any technical breach of seizin as set forth in the petition.

Some conflict of authority has existed, and still prevails, as to whether the existence of a public road or highway over the prop-

erty is a breach of any of the usual covenants. The prevailing opinion, however, is that it is a breach of the covenant against encumbrances.

In an early case in New York, although the question was not directly decided, yet a strong doubt was expressed whether a public road could properly be deemed an encumbrance. (Whitbeck v. Cook, 15 Johns. 483.) "It must strike any one with surprise," said Spencer, J., in that case, "that a person who purchases a farm through which a public road runs at the time of the purchase, and had so run long before, who must be presumed to have known of the existence of the road, and who chooses to have it included in his purchase, shall turn around on his grantor and complain that the general covenants in the deed have been broken by the existence of what he saw when he purchased, and what must have enhanced the value of the farm."

In Pennsylvania the question was directly presented in Patterson v. Arthurs, 9 Watts, 152, and the court expresses its surprise that a highway should ever have been imagined an encumbrance within the covenants, and the belief that it had been the universal understanding of both sellers and purchasers in Pennsylvania that the covenant against encumbrances did not extend to public roads. The case, however, was not an action brought on a covenant against encumbrances, but an action for an installment of the purchase-money by the vendor. This doctrine was affirmed in Dobbins v. Brown, 12 Penn. St. 80, but the court went on to say that if a person purchased land without having seen it, upon the representation of the vendor, where its value was materially lessened by a public highway being located upon it, which circumstance was not made known to or was concealed from the purchaser, the latter might obtain redress by an action on the case for deceit; or, in an action brought against him for the purchase-money, might have compensation made by a deduction therefrom.

The courts of Pennsylvania are the only ones that have decided the question directly in the negative; and Mr. Rawle, in explaining why it was regarded as a general understanding to that effect, says that it was originally agreed by Penn, at the formation of the colony, that there should be laid out "great roads from city

to city;" and as the wild state of the country rendered it impossible to be done otherwise than very gradually, it became the custom of the proprietaries, and afterwards of the commonwealth, to allow to all grantees of vacant land an addition in the proportion of six acres for every hundred, as a compensation for the roads that should thereafter be opened. This was so universal that, although the declaration of rights in the constitution provided that no man's property should be taken or applied to public use without just compensation being made, it was held that the law authorizing a turnpike to lay out and open roads without compensation was no infringement of the constitution, such compensation having been originally made in each purchaser's particular grant. (McClanachow v. Corwin, 3 Yates, 373.) And from this circumstance, and the fact that it had been considered that the running a road through a man's land conferred such a benefit upon him as to fully compensate him, is traced the common understanding which forms the basis of the decisions. But in an early case in Massachusetts the action was on a covenant, and the breach assigned was the existence of "a public town road or way, duly laid out by the town of A., for the use of all its inhabitants," which was held to be an encumbrance. In delivering the opinion of the court, Parsons, C. J., said: "It is a legal obstruction to the purchaser to exercise that dominion over the land to which the lawful owner is entitled. An encumbrance of this nature may be a great damage to the purchaser, or the damage may be very inconsiderable or merely nominal. The amount of damage is a proper subject of consideration for the jury who may assess them, but it cannot affect the question whether a public town road is, in legal contemplation, an encumbrance of the land over which it is laid." (Kellogg v. Ingersoll, 2 Mass. 101.) This case has been approved and sustained in all the New England States, and it is now considered as definitely settled there that a public highway does constitute a breach of the covenant against encumbrances. (Herrick v. Moore, 19 Me. 313 ; Haynes v. Young, 36 Me. 560 ; Pritchard v. Atkinson, 3 N. H. 335 ; Butler v. Gale, 27 Verm. 742 ; Parish v. Whitney, 3 Gray, 516 ; Hubbard v. Norton, 10 Conn. 431.)

Where the question has come up, the same doctrine has been approved in the Western States. Thus, it was held that where the owner of a tract of land had conveyed to a railroad company a right of way over the same, upon which the company had built and were operating their road, and subsequently thereto such owner conveyed the same land to another by a deed purporting to pass the fee to the entire tract, without any reservation in respect to such right of way, the easement so held by the railroad company was an encumbrance on the land, and its existence constituted a breach of a covenant against encumbrances contained in the deed, for which the covenantee might maintain his action. (Beach v. Miller, 51 Ill. 206.) So, in Iowa it has been decided that a right of way for a railroad is an encumbrance for which a grantee may recover, under a covenant against encumbrances, though he had full knowledge of such encumbrances at the time he accepted the deed. (Van Wagner v. Van Nostrand, 19 Iowa, 422; Barlow v. McKinley, 24 Iowa, 69.)

All the authorities concur in holding that an easement constitutes an encumbrance. If a person acquires the fee to land free and unencumbered, he obtains the exclusive and absolute dominion over it, and may use, enjoy and appropriate it to any purpose he may see fit. But if it is subject to an easement or an encumbrance it is not free, nor can he enjoy it to the fullest extent. If a public highway or a railroad track runs over it he cannot have its unobstructed enjoyment, for it is used by others in defiance of his will.

When a purchaser obtains title by deed without covenants, he of course takes it subject to all defects and encumbrances it may be under at the time of the conveyance. But if he insists upon and obtains covenants for title, he has the right, when obtained, to rely upon them and enforce their performance, or recover damages for their breach. The vendor is not compelled to make covenants when he sells land; but, having done so, he must keep them, or respond in damages for injuries sustained by their breach. Nor is it a relief or discharge of the covenant to say that both parties knew it was not true, or that it would not be performed when made. A person may warrant an article to be sound when

ST. JOSEPH.

Purcell v. The Hannibal & St. Joseph R.R. Co.

both buyer and seller know it to be unsound; so the seller may warrant the quantity and quality of an article he sells, when both parties know it is not of the quantity or quality warranted. The usual reason why a purchaser insists upon covenants for titles or a warranty of quality or quantity, is because he fears that the title is not good, or that the article lacks eitheir in quantity or quality.

Then, as a highway or a railroad located and running over one's land is an encumbrance, and to a greater or less degree obstructs and encumbers the free use and enjoyment of the land, it follows that a person selling land thus encumbered, and covenanting that it is not, must be held to perform his covenant by its removal, or respond in damages.

The points raised in the demurrer, therefore, were not all well taken, but the judgment must be affirmed because the allegations in the petition set out no cause of action — a breach of seizin only being averred.

Judgment affirmed.    The other judges concur.