ST. LOUIS COUNTY, Missouri, Appellant,

v.

ST. APPALONIA CORPORATION, a Corporation, William Eldon Ball and Inga Jean Ball, his wife, et al., Respondents.

No. 55601.

Supreme Court of Missouri, Division No. 2.

Sept. 13, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 11, 1971.

---

Joseph B. Moore, St. Louis County Counselor, Thomas W. Wehrle, Deputy County Counselor, Robert H. Grant, Asst. County Counselor, Clayton, for appellant.

John J. Cole, George S. Thomas, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, for respondents, William Eldon Ball and Inga Jean Ball.

HENRY I. EAGER, Special Commissioner.

This suit constitutes one phase of a condemnation action in St. Louis County, instituted for the purpose of obtaining land for the "Inner Belt Expressway." It was tried without a jury. Suit was begun in 1964, order of condemnation made, commissioners appointed, report filed, and a part of the Expressway has been built. We are concerned here only with the interests of William Eldon Ball and his wife, Inga Jean Ball, and of the City of St. Louis, in a part of the west one-half (50 feet) of the abandoned right-of-way of the Chicago, Rock Island & Pacific Railroad Company. The length of the right-of-way strip here in question is not definitely shown, but this makes no difference, for the parties have agreed upon the area and a valuation of the total tract. The right-of-way ran generally north and south; it was conveyed to the railroad by deed of June 1, 1887, from one McKnight. In 1890 Hugh McKittrick Jones and his wife acquired land on both sides of the right-of-way. In March 1925 and June 1925 the City of St. Louis enacted ordinances authorizing the acquisition of lands in St. Louis County for the extension of its water lines and conduits, and for appropriate rights-of-way along the route; one ordinance directed negotiations for the purchase of the lands and authorized condemnation; the other (and later one) authorized and directed the *purchase* of 13 tracts of the necessary land, including a strip of 3.2 acres, 100 feet wide, lying adjacent to and west of the railroad right-of-way at the location now in question, owned by Hugh McKittrick Jones and his wife; that ordinance specifically authorized a payment of $8,000 for the tract; it further provided that "upon the execution and delivery to them of deeds in the proper form conveying to the City of St. Louis the fee simple titles to said parcels of land, the Mayor and Comptroller are hereby authorized to pay * * *." Pursuant thereto the City paid to Jones and his wife the sum of $7,820 and received, under date of June 26, 1925, a deed entitled "General Warranty Deed" to the 100-foot strip abutting the railroad right-of-way; we shall hereafter simply refer to this deed as the deed to the City of St. Louis. Its effect and nature are directly in controversy here. The description was by metes and bounds, but the railroad right-of-way was used as one boundary, apparently for the full north and south distance of 1,274.21 feet. The deed to the City was made after the ordinances were enacted and after the condemnation suit was filed, but the tract thus deeded to the City *was not included* in the condemnation petition. We shall refer further to the contents of this deed, but omit that now in order to maintain some sense of cohesion in this statement of facts. We shall refer to Mr. and Mrs. Jones merely as "Jones."

The files in that condemnation suit, entitled City of St. Louis v. Louisiana Purchase Trading Co., et al., were offered in

evidence, but only certain parts are in our record. Those parts of the petition which are here show that the City sought "an easement and right of way in and through said private property for the construction and maintenance of underground water conduits and mains * * *." Obviously, that suit proceeded and the necessary condemnations were completed.

By deed dated July 12, 1950, Jones conveyed to defendants William Eldon Ball and his wife certain property lying east of and abutting the railroad right-of-way (i. e., on the opposite side from that conveyed to the City of St. Louis) and said to contain 3.501 acres. The tract was described by metes and bounds, and the easterly line of the right-of-way was used as one boundary, apparently for a distance of 784.65 feet. The deed was in the usual form of a general warranty deed, but it also included the following clause, which has given rise to much of the controversy in this case: "First parties further quit-claim unto William Eldon Ball and Inga Jean Ball, such reversionary rights, if any, which they may have in the Chicago, Rock Island and Pacific Railroad right-of-way adjacent or contiguous to the above described property."

It was stipulated that the abandonment of the Rock Island right-of-way and tracks was authorized by the ICC on November 29, 1954, effective in 30 days. The testimony of Mr. Kenneth Thies and that of Mr. Ball, indicated: that the use of the railroad tracks had been declining for several years; and that tracks in Clayton were being removed; that Thies discussed with Jones the purchase of about ten acres of land in the area now in question, and that this eventually resulted in the sale to him (Thies) of approximately six and one-half acres and to the Balls of three and one-half acres, as already indicated. Thies testified that he then knew that the right-of-way would be abandoned and inserted the quit-claim provision into the deed with this in mind, after discussing it with Jones and his wife. This testimony was offered upon the theory of showing the intent of the parties, and various objections were made to it; it was received conditionally. The Balls thus received the property immediately abutting the right-of-way on the east and opposite that deeded to the City of St. Louis. Thies received other property not involved here.

In the present condemnation action for the Inner Belt Highway, Mr. and Mrs. Ball filed an answer alleging, among other things, that the County had failed to include in the petition the west one-half of the abandoned right-of-way (where the right-of-way abutted their land), and that they owned it in fee because it had reverted to them. It is not necessary to discuss the remainder of the answer. They also filed a "Counterclaim and Crossclaim"; the counterclaim sought payment from the County for the west one-half of the right-of-way which had not been included in the petition, and the crossclaim was directed at the City of St. Louis, which was also a party defendant; the Balls sought a determination of title as to the west one-half of the right-of-way, prayed that they be adjudged the owners in fee, and that the condemnation be stayed until these matters were determined. Many other allegations and denials are immaterial to our present issues. The City of St. Louis filed answer to the crossclaim; it claimed fee simple title to the west one-half of the right-of-way, made numerous other allegations and denials, and prayed for a dismissal of the counterclaim and crossclaim.

In this state of confusion, the County and the Balls stipulated (without objection from the City) that the suit might proceed as to that part of the Ball property, exclusive of the claimed west one-half of the right-of-way, and that in the event title to that one-half was finally held to be in the Balls, then the County would pay them therefor at the same rate per square foot as they received in any "settlement" on their main tract or tracts. After award, exceptions, dismissal of exceptions, and

agreement for settlement the Balls accepted an award of $291,742 for the condemnation of their principal acreage, approximately 4.465 acres, reserving to both parties the right to litigate the issues raised in the counterclaim and crossclaim; this settlement fixed the rate paid at $1.50 per square foot. The counterclaim and crossclaim issues were tried in the present case. By subsequent stipulation the strip in controversy was stated to contain 47,016 square feet, which, at $1.50 per square foot, fixed a valuation of $70,524.

During the trial plaintiff offered in evidence and the Court received an original plat of the City's water lines, including the tract conveyed to the City by Jones. It was pointed out that it contained notations as to that strip as follows: "Jones, Carrol W. 3.128 acres Fee Date 5/26/25 Price $7820.00 Ord No. 34080," and that as to various other properties the notations were "condemned" or "easement." Counsel for crossclaimants objected to the notations as hearsay and conclusions; the Court took the evidence "for whatever it is worth."

It is necessary here to elaborate somewhat on the deed of June 26, 1925, from Jones and his wife to the City of St. Louis. As already stated, it conveyed a tract of land lying immediately west of the railroad right-of-way and the description used the west line of the right-of-way as one boundary. The tract contained something over three acres, probably 3.128 as stated above. The deed was entitled "General Warranty Deed"; it recited a consideration of $7,820 and did "grant, bargain and sell, convey and confirm" to the second party, its successors and assigns, the tract therein described, "TO HAVE AND TO HOLD the premises aforesaid, with all and singular the rights, privileges, appurtenances, immunities and improvements thereto belonging, or in anywise appertaining to the party of the second part, and unto its successors and assigns, Forever, the said parties of the first part hereby covenanting that they, their heirs and administrators

will Warrant and Defend the title to the said premises unto the said party of the second part, and unto its successors and assigns Forever, against the lawful claims and demands of all persons whomsoever, except taxes for the year 1926 and thereafter; * * *." The deed contained a reservation of the right of the first parties, their heirs and assigns, to "cross and recross" the strip (they had land on both sides), to construct and maintain a dirt or cinder roadway on it, to lay and use switchtracks and rails to connect with the railroad, to place and use, above or under the ground, light, power and telephone lines and water, gas and sewer pipes for the purpose of serving grantors' properties west and east of the strip conveyed. It was provided also that there should be no interference with grantee's "water mains, pipes and appurtenances," and that the grantee should not interfere with the proper drainage of the property to the west and east nor with its use by cuts, fills or grading.

The trial court entered extensive findings and conclusions and, of course, a decree. It found the essential facts which we have recited; it concluded that it was unnecessary to determine the nature of the estate obtained by the City of St. Louis in its 1925 deed from Jones, and declined to decide that question. It found: that Jones had in 1950 conveyed land east of the right-of-way to the Balls, with a quitclaim of all rights in the right-of-way; that the railroad abandoned the right-of-way in 1954, pursuant to a plan adopted "several years before," and that it was common knowledge in 1950 that it intended to terminate service within a few years; that in the present condemnation the County sought all of the property previously conveyed to the Balls by specific description, but only the east one-half of the right-of-way; that the County "negotiated privately" with the City for the acquisition of the west one-half (of which there is no evidence). The Court concluded that title to the disputed west

one-half was vested in the crossclaimants, and that they were entitled to compensation therefor at $1.50 per square foot. In its stated conclusions, the Court specifically held:

"2. Where the property of one fee holder is conveyed to different grantees on both sides of property encumbered by a right-of-way without a reservation of fee interest in the right-of-way, the title of each abutting owner extends to the center line of the right-of-way.

"3. Plaintiff's contention that a conveyance of property which merely abuts a right-of-way on one side thereof also passes an interest in this right-of-way itself is without basis.

"4. The 1925 acquisition by the City of St. Louis of the strip of land abutting the western boundary of the Chicago, Rock Island and Pacific Railroad right-of-way did not affect the ownership of the property upon which the right-of-way was located.

"5. The Court finds that the Joneses retained the fee simple title to the entire 100 foot wide strip of land encumbered by the right-of-way following the 1925 conveyance of the abutting property to the City of St. Louis."

The Court further held: that Jones and the Balls knew of the intent to abandon and intended that fee simple title to the entire right-of-way should be conveyed in 1950; that such fee simple title was thereby conveyed, and that a reversion of the *use* of the right-of-way to the Balls was accomplished. A decree was entered accordingly and (after stipulation on the footage) judgment was entered for counterclaimants and crossclaimants against the County in the sum of $70,524. A motion for judgment or a new trial was filed by the County; this was unnecessary in a court-tried case, but it extended the time for this appeal.

It is difficult to discern the trial court's exact theory from these findings and conclusions. We disagree with its result on the questions decided. This will then necessitate a ruling on the nature of the title conveyed by Jones to the City of St. Louis. We have jurisdiction, without question. The County is a party, a sum in excess of $70,000 is involved and title to real estate would seem to be directly involved.

■ The Court held that a conveyance of property on *both* sides of a right-of-way "absent evidence to the contrary," showed an "intention" to convey the fee in the right-of-way, and that similar conveyances to different grantees on both sides, without any reservation of the fee, passes title to each to the center of the right-of-way. Generally, these statements are true, although there are some cases applying the "absence of evidence to the contrary" rule to the second stated situation also. And we cannot tell whether the Court meant to say that the two separate conveyances must be made at the same time. The Court then held that a conveyance of property which merely *abuts* a right-of-way on one side does not pass any interest in the right-of-way; it did this by saying that plaintiff's contention to this effect "is without basis." In this the Court erred. We suppose that it confined the ruling to this case, but we cannot tell whether it based this conclusion upon the fact that the City's deed was by metes and bounds or not; such a thought was indicated in the oral argument. The Court seems to have been influenced throughout by what was argued as the intent of Jones as shown by his deed to the Balls 25 years after the City's deed. If this was the basis, it was wholly unfounded. The extent of the conveyance to the City must be judged by that deed itself, aided *perhaps*, by facts and circumstances *then* existing.

Jones did not convey property on both sides of the right-of-way at the same time,

and there is no reason for considering such a situation. He conveyed to the City a tract of land on the west side of the right-of-way, immediately adjoining it and using the westerly line of the right-of-way as one boundary. There was no reservation or exception whatever in the deed and there is *no evidence* of facts or circumstances to show that Jones *at that time* intended to reserve the west one-half of the right-of-way, or even thought of it. This occurred approximately 25 years before the abandonment of the railroad was even seriously considered.

■ There is no difference in the effect on abutting owners between the abandonment of a railroad right-of-way and the vacation of a street or road. Koviak et al. v. Union Electric Co., Mo., 442 S.W.2d 934. In the very early case of Snoddy v. Bolen, 1894, 122 Mo. 479, 25 S.W. 932, loc. cit. 933, it was held that "a conveyance of land bounded upon a public street carries the fee to the center of the street, unless the contrary intent is clearly expressed." The rule was said to be well settled. The property there was merely conveyed by lot number, with no mention of the abutting street. The Court said that an intention "to withhold his interest in a road, to the middle of it, * * * is never to be presumed. * * * It would require an express declaration, or something equivalent thereto, to sustain such an inference; * * *." And, later, the Court further said, loc. cit. 934: "Enough has been said to show that the rule stands on the ground of policy, and a presumption raised by the law to carry out the policy. The presumption is that the grantor did not intend to withhold any interest in the street or highway. The presumption may be overcome, but it must be overcome by something stated in the deed, which *shows clearly and distinctly* an intention to withhold an interest in the street. The rule is of the utmost importance, and is necessary to prevent afterthought strifes and litigation, like the one now in hand, over detached strips and gores of land, generally of no value to any one save the lot owner."

In Koviak et al. v. Union Electric Co., Mo., 442 S.W.2d 934, the controversy involved an abandoned railroad right-of-way. Plaintiffs had received their title to a tract abutting the right-of-way by deed describing it by metes and bounds, with the right-of-way being used as one boundary. After the right-of-way had been abandoned the railroad gave a quit-claim deed to the Union Electric and plaintiffs' grantor also purported to grant an easement to Union Electric. The Court held that plaintiffs had acquired a fee title to the center of the right-of-way, subject to the railroad's easement which had terminated upon abandonment. The Court followed the rule that, upon abandonment, the title to the center of the road or right-of-way is presumed to be in each of the abutting landowners, in the absence of evidence showing clearly and convincingly an intention to the contrary. The application of the rule was not affected by the fact that the description in plaintiffs' deed was by metes and bounds, nor by the fact that the right-of-way had already been abandoned at the time of plaintiffs' deed. The Court discussed the case of Prewitt v. Whittaker, which we shall mention later, but held that in the case before it there was no evidence indicating the intention of either the grantor or grantee "with respect to the right of way," the only reference being to it as a boundary line. It further held: that after conveying to plaintiffs, the Lattraces (plaintiffs' immediate grantors) had *no title* remaining in the right-of-way which the surviving wife could convey to Union Electric, by easement or otherwise, for she could not convey anything "she did not own"; and that the defendant had not met the burden of showing by clear and convincing evidence that the grantors of plaintiffs had *not* intended to convey an interest in the right-of-way.

In Prewitt·v. Whittaker, Mo., 432 S.W.2d 240, the controversy involved a vacated

street. Defendant had acquired several lots east of the vacated street, described by lot numbers, and the street was not mentioned in the deed; it had, in fact, long been vacated, and plaintiff and his predecessors (who owned land west of the vacated street and had conveyed defendant's lots to him) had occupied the vacated space with a barn, a garden, and had mowed the grass for years, both before and after the conveyance to defendant. In other words, the credible evidence showed actual occupation by plaintiff or his predecessors of the vacated street at the time defendant took his deed and thereafter. After a clear statement of the policy of the law and of the presumption that an abutting grantee takes fee title to the center of the street (or right-of-way) the Court discussed Snoddy, supra, and to a lesser extent other cases. It concluded that there is good reason for a distinction in the rule to be followed where the street or way has already been vacated before the abutting grantee gets his title and the one to be followed when it is abandoned later; that in an existing street or way the grantor has no right of occupation or use, the grantee has only a possibility of full title and user, and the presumption may only be overcome by a reservation or exception in the deed; but in a conveyance of land abutting a vacated street or way the original owner should not be so limited because he has full title and his intention to withhold the vacated area may be shown by the "surrounding facts and circumstances if they clearly and unequivocally show such an intention." It was held there that the facts and circumstances did so, and that the presumption had been rebutted, principally by the continued and actual occupation of the tract. It should be noted that the tract there was described by platted lots with no reference to the vacated street and that the Court held: (1) that clear and convincing evidence was required to rebut the presumption that defendant received title to one-half of the vacated street; and (2) that if there had been an existing street there

must have been some reservation or exception in the deed to rebut the presumption. The opinion is discussed with approval in Koviak, supra, which is, so far as we know, the last discussion of the subject. It is also cited with approval in the concurring opinion in Quinn v. St. Louis-San Francisco Ry. Co., Banc, Mo., 439 S.W.2d 533 at loc. cit. 536.

The general rule, namely, that upon the conveyance to one of a fee title in a tract of land abutting upon a street or way there is a presumption that the grant conveys fee title to the center of the way is recognized also in the following cases: Brown v. Weare, 348 Mo. 135, 152 S.W. 2d 649; Quinn v. St. Louis-San Francisco Ry. Co., Banc, Mo., 439 S.W.2d 533 (particularly concurring opinion and cases cited therein); Hennick v. Kansas City Southern Ry. Co., 364 Mo. 883, 269 S.W. 2d 646; City of Springfield ex rel. Koch v. Eisenmayer, Mo.App., 297 S.W. 460; State ex rel. State Highway Commission v. Jacob, 362 Mo. 781, 244 S.W.2d 7. And see the Annotation at 49 A.L.R.2d loc. cit. 984. That annotation seems to indicate that the question is really one of construction of the deed rather than of the existence and rebuttal of a presumption. We shall not have space to discuss that somewhat technical distinction here. The result, generally, is the same.

In American Steel & Wire Co. of New Jersey v. City of St. Louis, 354 Mo. 692, 190 S.W.2d 919, the Court said, loc. cit. 923: "Absent an express reservation, it is the universal rule that a conveyance of land bounded on a public highway or street carries with it the fee to the center of the highway or street. Furthermore, a description of the land by metes and bounds, giving courses and distances of the boundaries, does not exempt the conveyance from the rule." (Citing cases.)

In the above annotation, 49 A.L.R.2d at loc. cit. 995, the author states, after a very considerable review of the cases: "Undoubtedly the intention not to convey

the highway area must appear from the deed or other instrument under consideration." To the same effect is *Snoddy*, as we read it. The distinction between streets and ways already vacated and those still in use seems to have arisen first in Prewitt, supra; that case has been discussed with approval since, if not on this particular point. In our case we may accept the distinction, but it does not affect our result. The railroad was certainly still in operation in 1925 when the City received its deed, and under the authority of Snoddy and Prewitt, the deed must have contained some reservation or exception of the fee in the west one-half of the right-of-way. It did not do so. On the other hand, there was *no evidence* of facts or circumstances to show that Jones in 1925 intended to reserve any interest in the west one-half of the right-of-way. It is true that the grantors reserved the right to certain specified easements in and across the tract conveyed, but these in no way affected the grantee's interest in the adjoining right-of-way. We, therefore, hold that the deed to the City, if it constituted a conveyance of the fee (which we shall consider), conveyed to the City also a fee interest in the west one-half of the railroad right-of-way.

The crossclaimants have cited no case which, as we read the cases, should alter the above conclusion. These cases, Bray v. St. Louis-San Francisco Ry. Co., Mo., 310 S.W.2d 822, Horn v. Muckerman, Mo., 307 S.W.2d 482, Broderick v. Tyer, 239 Mo.App. 118, 187 S.W.2d 476, merely confirm the rule which we have stated. Horn does say that if the whole street or way came from the owner on one side, his grantees are entitled to the entire fee upon abandonment; Bray holds that the owner of land on both sides of a right-of-way owns the fee under the entire way, and upheld the title of an abutting owner as against the heirs of a remote grantor. These do not affect our question.

Defendants argue that Jones could convey the fee in the entire right-of-way to the Balls, although the land was then encumbered by the railway easement. Certainly he could, if he owned it, but this evades the real question, i. e.,—had he previously conveyed the fee in the west one-half *by operation of law* to the City in 1925, so that he would have no interest left in the west one-half in 1950 when he conveyed to the Balls? Counsel say: that the presumption should only be applied as a matter of public policy where the original grantor has (1) conveyed property on both sides of the right-of-way without specifically excluding the right-of-way; or (2) having conveyed on one side, he dies without further action; that in such cases a presumption is justified, but that here Jones, while still alive, conveyed the land on one side (east) to the Balls, specifically conveying all reversionary rights to them; concluding, they say that here all such rights were conveyed by Jones to the Balls and that there is no need for any presumption, because the *intentions* of Jones were clear. Defendants thus plant their case upon the theory that Jones in 1950 conveyed all the fee in the right-of-way, and say that there is no case under such facts upholding a presumption of ownership in an abutting owner who previously got a deed. We do not find that our cases make the tenuous distinction which defendants thus advance. In Koviak, supra, the Court held that plaintiff's living grantor (having conveyed abutting land to plaintiff by a deed making no reference to the right-of-way) could not, on the theory that she still owned the right-of-way, grant an easement thereon to the defendant. She could not convey "something she did not own."

Defendants admit that if Jones had not included a quitclaim of the reversionary interest in his deed to the Balls, *then* the Balls would only have been entitled to the east one-half. This is saying that by a provision in a deed of 1950, and by an intention *then* shown, the legal effect of a deed executed and delivered in 1925 can be materially changed. That is simply not

the law. The effect of a valid deed is not held in suspense for 25 years while waiting to see what the grantor may later intend or do. The City's rights were fixed in 1925 when it received its deed, and all the evidence of the 1950 intentions and knowledge of Thies and Ball, and supposedly of Jones, concerning the abandonment of the right-of-way and their intentions in giving and taking the Ball deed is wholly ineffective to change them. The admission of respondents that, had Jones not included a quitclaim of the reversion in 1950 the presumption as to the City would have been applicable, is in itself a concession that from 1925 to 1950 the City (except for the next point) was presumed to own in fee the west one-half of the right-of-way. We simply do not shift titles around in any such manner depending upon changing intentions.

■ The remaining question is whether the City got a fee or an easement in the tract which it purchased in 1925. We have already described the deed in detail. It contained the usual granting clause of a general warranty deed, the habendum clause and the warranty clause; it was also entitled "General Warranty Deed"; and there was no limitation on the uses to which the tract might be put. The only question is whether Jones changed the fee to an easement by his reservation of certain rights to use the tract. We look back at the status as of that time. One city ordinance authorized negotiations and, if necessary, condemnation of the land needed for the water conduits, etc. The second ordinance authorized the purchase of 13 specific tracts (including this one) and authorized specific payments upon receipt of *fee titles*; the authorized payment for this tract was $8,000. The City paid Jones $7,820 and took the deed in controversy. The tract was *not* included in the condemnation petition or proceedings, for the obvious reason that the purchase had already been arranged.

The granting, habendum and warranty clauses of this deed are in no way consistent with the granting of an easement.

The grantors reserved the right to cross and recross (by roads or switches) and to install utilities, since they owned land on both the east and west. These reservations are consistent with the grant of a fee, but are not consistent with the grant of a mere underground easement, for in the latter case the grantors could ordinarily do anything they wished with the land without reservation, so long as they did not interfere with the easement granted. The consideration paid was substantial, and presumably sufficient for a fee title at that time. In the (1925) condemnation suit the City of St. Louis sought easements in and under the property taken thereby. As already stated, this tract which was deeded to the City, was *not* included. The nature of that suit, therefore, cannot be controlling as to the extent of the title in question. The parties had the right to make any recognized type of conveyance they chose. There are various reasons why a condemnor might prefer a fee title on a certain tract or tracts, and we need not go into that.

In Powell v. St. Louis County et al., Mo., 446 S.W.2d 819, it was held that a railroad had received a fee title in a strip of land 2,200 feet long and 100 feet wide, described by a center line and by stations, degrees, minutes and directions and by further reference to a map on file. The deed contained the "grant, bargain, sell, convey and confirm" clause of a warranty deed, and the usual habendum and warranty clauses. The deed further provided that a farm crossing should be built and that a platform and station should be built within 60 days after a "Railroad shall be built and put in operation along said strip * * *," and maintained for three years and that local passenger trains should stop when flagged during such period. A railroad was built and later abandoned; by mesne conveyances St. Louis County had acquired the railroad's title. Powell, the plaintiff, was an adjoining owner; he claimed that the railroad only acquired an easement and that, upon abandonment, "he, as abutting owner, became owner free

from railroad's easement." The trial court and this Court held that a fee had been conveyed. The Court said in part, loc. cit. 821, 822: "There is no doubt that the 1902 deed was sufficient, under the rules laid down in Coates & Hopkins Realty Company v. Kansas City Terminal Railway Company, 328 Mo. 1118, 43 S.W. 2d 817, to convey a fee simple title, although the conveyance was for railroad purposes. The deed, by its terms, was a general warranty deed. A valuable consideration was paid the grantor. The stated consideration of $3,300 for a 7.3-acre tract is proved by the terms of the deed. Anderson v. Cole, 234 Mo. 1, 136 S.W. 395, 396 [3]; Brown v. Weare, 348 Mo. 135, 152 S.W.2d 649, 653 [6], 136 A.L.R. 286. The deed contains no specific limitation on the quantum of title conveyed. Appellant does not contend that the provision of the deed respecting the farm crossing and passenger shelter is a condition of the conveyance, limiting the estate conveyed, although he does contend, as we will consider below, that the provision, coupled with other provisions of the deed, evidences an intention to restrict the quantum of title conveyed. * * *.

"The absence of any reference in the deed here involved to the interest conveyed as right of way distinguishes such deed from that involved in Schuermann. * * The language of the deed imposes no limitation upon the grantees' use of the property. The covenants relied upon as indicating that the land was to be used for railroad purposes relate only to the obligation of the grantee in the event that a railroad was constructed on the land." The Court distinguished the case of Schuermann Enterprises, Inc. v. St. Louis County, Mo., 436 S.W.2d 666 just mentioned. Defendants seek to distinguish Powell, supra, on the ground that no limitation was there imposed upon the railroad's use of the property, and that there was merely an obligation imposed on the grantee in the event a railroad was built. The grantor there did reserve a right to

cross and recross and the right to use a station and flag the trains. In our case the grantor Jones did not limit the use but simply reserved the right to certain surface uses; the difference in the two deeds lies merely in the degree or extent of the reserved uses or easements. The case is applicable here.

In Schuermann, supra, St. Louis County had acquired by mesne conveyances a strip of land which had been used by the St. Louis Belt & Terminal Ry. and later abandoned. St. Louis University had originally conveyed the strip by "General Warranty Deed" to the Railroad. Plaintiff claimed title through a conveyance of the abutting property from St. Louis University, which was made approximately 50 years after the original conveyance to the railroad. The question was: what title did the railroad acquire, i. e., a fee or an easement? This Court noted that where a railroad acquires property for *right-of-way* only, it acquires an easement; it further held that the original deed only purported to convey a right-of-way, and being thus limited, the adjoining owners were entitled to the strip upon abandonment. That case is not persuasive here. There is no such limitation of purpose in the deed involved in our case and the grantee was the City, not a railroad. This Court distinguished that case in its opinion in Powell, supra.

Defendants cite: Kellogg v. Malin, 50 Mo. 496 (1872), and Lloyd v. Garren, Mo., 366 S.W.2d 341. In Kellogg, supra, the Court considered the title of a railroad to a strip of land, which had been taken by condemnation. That proceeding was under a special statute which constituted the charter of that railroad, and which authorized an order vesting fee title. There was no deed. The Court held, actually as a matter of policy, that a railroad takes only an easement where its acquisition by condemnation is for right-of-way purposes. That rule has been the policy of Missouri for at least a century. It was expressly included in our 1875

Constitution, Art. 2, Section 21, as follows: " * * * The fee of land taken for railroad tracks without consent of the owner thereof shall remain in such owner, subject to the use for which it is taken." This provision is still a part of our Constitution, Art. 1, Section 26, Constitution 1945. Thus, railroad rights-of-way have long been considered to be in a separate classification, and Kellogg, supra, can have no effect on our case. The City was not a railroad and its deed was not for railroad purposes, nor was the tract acquired by condemnation or "without consent of the owner." We shall not speculate, as defendants ask us to do, that the City only *intended* to receive and Jones to convey, the same interest as the City acquired in other tracts by condemnation.

In Lloyd v. Garren, supra, 366 S.W.2d 341, one Kelly deeded land to the State " 'for the purpose of constructing and maintaining a State Highway on the said land * * *.' " The highway was constructed and later abandoned. Kelly's successors in title (the plaintiffs) claimed the land on the theory that the State had only acquired an easement. The county court contended that the road could still be used by the public, since the State had received the fee. In holding that the deed of Kelly conveyed only an easement the Court noted that "There is an absence of language to indicate the grant of the fee," and that the conveyance was expressly made " 'for the purpose of constructing and maintaining' " a highway. Such is certainly not true of our deed. The full deed in that case was not quoted, and the deeds cannot be fully compared, but the differences are obvious. The cited cases are not persuasive here.

Section 442.460, RSMo 1959 is also worthy of note, providing that " * * * every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily implied *in the terms of the grant.*" (Italics ours.) Here there certainly was no expression in the deed of a "less estate" and we hold that nothing in the deed *"necessarily implied"* a lesser estate. We construe the deed as it was written, and not as modified or altered by evidence of what the City did concerning other property, or any supposed "threat of condemnation."

We hold that the City of St. Louis acquired the fee title in the tract conveyed by the deed of June 26, 1925, and that upon the abandonment of the railroad right-of-way it (the City) was the owner of the west one-half of that part of the right-of-way adjoining its property. The defendant City of St. Louis has claimed fee title in the controverted strip, but has asked for no adjudication of title; it has prayed that the "counterclaim and crossclaim be dismissed." In the counterclaim and crossclaim the Balls also named as "defendants" Creighton B. Calfee, Collector of the City of Ladue, James F. Bell, Collector of St. Louis County, and unknown persons who might claim an interest in the property. The trial court, as noted, adjudicated the title in the counterclaimants and crossclaimants, William E. Ball and Inga Jean Ball, and awarded them damages of $70,524.

The judgment is reversed. The trial court is directed to enter judgment for plaintiff, St. Louis County, Missouri, and against defendants William E. Ball and Inga Jean Ball on their counterclaim and crossclaim. It is further directed to dismiss the counterclaim and crossclaim with prejudice as to defendants, City of St. Louis, a municipal corporation, Creighton B. Calfee and James F. Bell, Collectors, and all "unknown persons" referred to therein.

PER CURIAM.

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

MORGAN, P. J., DONNELLY, J., and HENLEY, Alt. J., concur.

FINCH, J., not sitting.