**Albert Lee SPRINGS, Respondent,**

v.

**Clarence E. CANTRELL and Mary B. Cantrell, Appellants.**

**No. 10096.**

Missouri Court of Appeals, Springfield District.

July 16, 1976.

Robert A. Dempster, Joseph P. Fuchs, Dempster, Yokley, Fuchs & Barkett, Sikeston, for appellants.

Kenneth L. Dement, Sikeston, for respondent.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

This is an action to quiet title to certain real estate in Scott County, Missouri, formerly used as a railroad right of way. In 1970 the railroad abandoned the right of way by a formal disclaimer. The abandoned right of way ran north and south and was 100 feet wide. Plaintiff Albert Lee Springs owns land lying immediately east of the right of way. West of the right of way, and adjoining it, is Scott County Highway Z which also runs north and south. West of Highway Z, and adjoining it, is the land of the defendants Clarence E. Cantrell and Mary B. Cantrell.

The case was submitted to the trial court on stipulated facts. Both plaintiff and defendants claim the ownership of all the abandoned right of way lying between their respective lands.

The judgment of the trial court included the following: "The [land] of the defendants does not abut the right of way. Route Z separates the land of defendants from the right of way. The property owned by the plaintiff does abut the railroad right of way."

The trial court decreed that title to the disputed area was in plaintiff and that defendants had no interest therein. Defendants appeal.

For the purposes of this opinion the lands involved are designated, respectively, Tract A, Tract B, Tract C, and Tract D. From west to east they lie in this order: Tract A (defendants' land), Tract B (County Highway Z), Tract C (the abandoned railroad right of way), and Tract D (plaintiff's land).

Tract A is irregular in shape but that portion of it which is involved here has a north-south measurement of 208¾ feet. The width of Tract B does not clearly appear, although it may be 75 feet. Tract C is 100 feet wide. Tract D is in the form of a square, each side being 208¾ feet long. Tracts A, B, C, and D have a common southern boundary.

Thus the area in dispute, Tract C, has an east-west measurement of 100 feet and a north-south measurement of 208¾ feet.

The following steps in the history of the title to the tracts are germane:

1. Late 1800's: While all four tracts were in common ownership, Tract C became the railroad right of way. The underlying fee to Tract C remained in the common owner, subject of course to the burden of the right of way use.

2. 1917: Plaintiff's predecessor acquired title to Tract D. The deed recited that the west boundary of Tract D was the east boundary of Tract C.

3. 1935: Defendants acquired title to Tracts A and B. The deed recited that the west boundary of Tract C was the east boundary of the land conveyed.

4. 1938: The State of Missouri acquired Tract B for highway purposes. The state obtained deeds from defendants and from plaintiff's predecessor. The descriptions in the two deeds cannot be traced, with information contained in the record, so as to disclose what portion, if any, of Tract B was covered by the deed from plaintiff's predecessor. There is no showing, however, that plaintiff's predecessor (or plaintiff) ever claimed any interest in Tract B.

5. 1946: Plaintiff acquired title to Tract D.

6. 1970: The railroad abandoned Tract C and disclaimed all title and interest therein.

Although under circumstances [1] not present here a railroad may acquire the fee simple interest in land, the railroad's interest in Tract C was that of a right of way only. That interest, for convenience, may be termed an easement.[2] When that easement was created, the underlying fee to Tract C remained in the common owner (see Step 1 of the title history).

If, at the time Tract C was abandoned by the railroad, one person had remained the owner of Tracts A, B, and D, that person would have remained the owner of Tract C, free of the burden of the railroad right of way.[3] This would be true because the title, the fee, to Tract C would have "rested and continued" in the common owner [4] and technically there would have been no reversion of title, title having never left the common owner. There was merely an elimination of the burden of the railroad's use of the right of way.

But, as the title history shows, Tracts A, B and D were not held in common ownership at the time the railroad right of way was abandoned in 1970. In 1935 defendants acquired title to Tracts A and B. In 1946 plaintiff acquired title to Tract D. For the moment this court lays aside the fact that in 1938 Tract B became burdened with a highway easement.

If Tract B had not become burdened with the highway easement, upon the abandonment of the railroad right of way in Tract

1. *Schuermann Enterprises, Inc. v. St. Louis County,* 436 S.W.2d 666, 668[1] (Mo.1969).

2. "The term 'easement' as applied to the interest in land which a railroad acquires for right of way and railroad purposes is a term of convenience. The term is not used in its technical and limited sense. It has been referred to as a special, peculiar interest subject to its own rules. In some respects the interest partakes of the nature of a corporeal estate. . . . However, in deciding the question before us, we do employ the term 'easement' in its accepted sense to the extent that the fee in the land over which the easement is granted remains in the grantor and his heirs and assigns." *Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649, 654[11] (1941).

3. "Where an easement only is received by a railroad company, the same rule should apply to the lands used for railroad purposes and later abandoned as applies to a public highway. . . . If a highway is taken wholly off one man's property and such highway is later vacated, the use of the land goes back to the original owner, or his grantees, freed from the public use or easement. It is in the absence of evidence to the contrary that the title to the fee is presumed to be in the abutting landowners and the title of each extends to the center of the way. This presumption may be rebutted by evidence to show that the entire way has been taken from the land of only one of the abutting owners." *Brown v. Weare,* 152 S.W.2d 649, 654[14, 15] (1941). See also *St. Louis County v. Delbet Inv. Co.,* 469 S.W.2d 951, 953[1–4] (Mo.App.1971).

4. "Of course the word 'revert' in its technical sense as dealing exclusively with titles should not be used in conjunction with an easement. It is a primary rule that in the grant of an easement no title passes but the title rests and continues in the holder of the servient estate so that when the easement ceases there can be no such thing as a reversion of title. In such an event the servient estate is merely freed from the burden of the use and any reversion is merely that of the use." *Brown v. Weare,* 152 S.W.2d 649, 655[16] (1941).

C, defendants would remain the owners in fee of the west one-half of Tract C and plaintiff would remain the owner in fee of the east one-half of Tract C.[5]

■ This is true for the reason that in 1935, when defendants acquired title to Tracts A and B, and in 1946, when plaintiff acquired title to Tract D, there was an *existing*[6] railroad right of way on Tract C and there was nothing in the deed to defendants or in the deed to plaintiff which showed any intention on behalf of the grantor to retain the fee in Tract C.[7] This result obtains even though the description of Tracts A and B, contained in the 1935 deed to defendants, and the description of Tract D, contained in the 1946 deed to plaintiff, was by metes and bounds.[8] This result also obtains even though, as the judgment of the trial court pointed out, one of the deeds in defendants' chain of title to Tracts A and B contained language, in the description of the land conveyed, to this effect: "Except . . . whatever has been consumed by the [railroad] right of way." The latter language was "a reserva-tion of the easement only and not an exception of the fee to the strip and the fee passes by the deed."[9]

Is the foregoing result changed by reason of the fact that in 1938 Tract B became burdened with a highway easement? The question must be answered in the negative.

The trial court stated, and the fact is, that County Highway Z (Tract B) lies between Tract A (defendants' land) and Tract C (the abandoned railroad right of way).

However, defendants since 1935 have held the fee interest in Tracts A and B. It is true that in 1938 Tract B became subject to the highway easement but the underlying fee remained in defendants. Thus, when Tract C was abandoned by the railroad, defendants were, and since 1935 had been, owners of the land adjoining Tract C on the west and remained the owners in fee of the west one-half of Tract C. Abandonment by the railroad merely eliminated the burden of its prior use of Tract C.

In *State v. Jacob,* 260 S.W.2d 22 (Mo. 1953), a condemnation proceeding, title to a

---

5. The following language appears in *Neil v. Independent Realty Co.,* 317 Mo. 1235, 298 S.W. 363, 366 (1927): "If a highway be laid out through the land of A. and he afterwards conveys the land upon one side of the highway to B. and the land upon the other to C., without reservation, they become the owners of the fee in the soil of the highway equally, each owning to the center." See also *Brown v. Weare,* 152 S.W.2d 649 (quoted in Footnote 3) and *Koviak v. Union Electric Co.,* 442 S.W.2d 934, 937[3] (Mo.1969).

"Owners of the land adjacent and contiguous to a railroad right of way become the owners thereof in fee when abandoned by the railroad." *State v. Jacob,* 362 Mo. 781, 244 S.W.2d 7, 9[1] (1951). See also *Schuermann Enterprises, Inc. v. St. Louis County,* 436 S.W.2d 666, 668[2] (Mo.1969); *St. Louis County v. Delbet Inv. Co.,* 469 S.W.2d 951, 953[1–4] (Mo.App.1971); *St. Louis County v. St. Appalonia Corp.,* 471 S.W.2d 238 (Mo.1971).

6. For a discussion of the situation where land adjoining a highway is conveyed *after* the highway has been vacated, see *Prewitt v. Whittaker,* 432 S.W.2d 240, 244 (Mo.1968).

7. "A conveyance of platted lots or blocks adjoining an *existing* street, without mentioning the street in the deed, carries to the grantee the fee simple title to the center of the street (or to the far side if the original grantor contributed all of the street to public use) . . . The presumption is that the grantor did not intend to withhold any interest in the street or highway. . . . The presumption may be overcome . . . but it must be overcome by something stated in the deed which shows distinctly an intention to withhold an interest in the street." *Prewitt v. Whittaker,* 432 S.W.2d 240, 243[2] (Mo.1968). See also *St. Louis County v. St. Appalonia Corp.,* 471 S.W.2d 238, 243[2] (Mo.1971).

8. ". . . [U]pon abandonment the title to the center of the road or right-of-way is presumed to be in each of the abutting landowners, in the absence of evidence showing clearly and convincingly an intention to the contrary. The application of the rule was not affected by the fact that the description in plaintiffs' deed was by metes and bounds." *St. Louis County v. St. Appalonia Corp.,* 471 S.W.2d 238, 243 (Mo.1971); See also *Koviak v. Union Electric Co.,* 442 S.W.2d 934 (Mo.1969).

9. Gill on Missouri Titles (4th Ed.) Vol. 1, § 163, p. 146. See *Carter v. Foster,* 145 Mo. 383, 47 S.W. 6 (1898); *Stotzenberger v. Perkins,* 332 Mo. 391, 58 S.W.2d 983 (1933); *Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649, 656[21] (1941).

strip of land was involved. The strip was an abandoned railroad right of way. The Highway Department had obtained quit claim deeds from certain "lot owners." The land of the lot owners was separated from the abandoned railroad right of way by St. Charles Avenue.

The court held that the lot owners were the owners of the fee in the abandoned railroad right of way, and thus right of way deeds from them to the Highway Commission gave the latter a valid easement.

At p. 24 the court said: ". . . The law in this state is that when Home Heights Company [the lot owners' grantor] conveyed the lots north of St. Charles Avenue to the [lot owners], it being the owner of the fee upon which the avenue lay, its deeds also conveyed the fee to St. Charles Avenue, subject to the easement for street purposes . . . And the lot owners, having thus acquired from Home Heights Company the fee to the land occupied by St. Charles Avenue, *by operation of law became the owners in fee of the right of way strip which abutted St. Charles Avenue.* In other words, the deeds from Home Heights Company to the lot owners on the north of *both* the *right of way strip* and *St. Charles Avenue also conveyed title in fee to both the strip and the avenue, subject to the respective easements in each; and upon abandonment of the strip for railroad purposes, the fee, then resting in the lot owners, was freed of the serviency of the easement.*" (Emphasis added) To similar effect see *State v. Jacob,* 244 S.W.2d 7 (1951); *Bay v. Stout Sign Co.,* 301 S.W.2d 786, 789 (Mo. 1957); *Horn v. Muckerman,* 307 S.W.2d 482 (Mo.1957); *St. Louis County v. Delbet Inv. Co.,* 469 S.W.2d 951 (Mo.App.1971).

The trial court should have decreed that defendants are the owners in fee of the west one-half of Tract C and plaintiff is the owner in fee of the east one-half of Tract C.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

All concur.

