Katheryn CRAVENS, Plaintiff-Appellant,

v.

Bradley JOLLY, Jr., Defendant-Respondent.

No. 12205.

Missouri Court of Appeals, Southern District, Division Three.

Oct. 2, 1981.

Motion for Rehearing or to Transfer Denied Oct. 26, 1981.

Briney Welborn, Briney, Welborn & Spain, P. C., Bloomfield, for plaintiff-appellant.

C. H. Parsons, Jr., Parsons, Mitchell, & Wilson, P. C., Dexter, for defendant-respondent.

BILLINGS, Presiding Judge.

The Circuit Court of Stoddard County entered judgment in favor of defendant Bradley Jolly, Jr., on plaintiff Katheryn Cravens' four-count petition to quiet title, ejectment, damages and an injunction, and quieted title to a strip of land in the defendant on his counterclaim, subject to an easement in favor of the United States. We affirm.

The dispute between the parties concerns the underlying fee interest in 39.9 acres of land which were burdened with a perpetual easement in favor of the United States as the result of a judgment entered in 1975 in condemnation proceedings brought by the federal government for the St. Francis [River] Project. The easement was for the construction, operation and maintenance of channel improvement works, and divested owners of all right, title and interest in and to any buildings, improvements, timber and crops. However, it reserved to the owners, their heirs and assigns, all such rights and privileges in the land as could be used without interfering or abridging the rights and easement acquired.[1]

At the time of the condemnation, plaintiff Cravens was the owner of the Southwest Fractional One-Quarter lying east of

---

1. From the record we are able to glean that the project involved the re-channeling of the St. Francis River, together with the construction of new levees, berms and drainage ditches.

the St. Francis River in Section 34, Township 25 North, Range 8 East, Stoddard County, Missouri. The easement, varying in width from approximately 650 feet to 300 feet, crossed the land in a diagonal fashion from northwest to southeast. The area within the easement, as well as the acreage to either side, was unimproved timber land, brush and sloughs.

In 1976, by warranty deed, plaintiff sold and conveyed the tract to the defendant *"except that part heretofore conveyed to the U. S. A."*[2] Defendant began clearing the lands, both within and without the easement area. Timber was cut and sold. In 1976, 1977, and 1978, defendant planted and harvested crops from a portion of the easement area, as well as lands cleared outside the strip. Two slough areas within the strip were not cleared because defendant was notified they had been declared to be "wet lands" by government officials and not subject to clearing.

Plaintiff filed this suit in May 1979, contending she was the owner of the 39.9 acres of land, subject to the easement. She sought to have the title to the lands quieted in her, subject to the easement. She sought possession of the strip, together with damages and rents and profits. She alleged wrongful cutting and carrying away of timber and prayed for treble damages. And, she sought an injunction against defendant to prohibit his possessing and trespassing on the easement strip. By answer and counterclaim, the defendant denied the allegations of plaintiff's petition and claimed ownership of the fee interest in the tract, subject to the government's easement, and prayed the title be quieted in him. Trial was to the court and judgment entered in favor of defendant on plaintiff's petition and his counterclaim.

■ Plaintiff contends that the evidence shows she intended to retain the underlying fee interest in the strip. Her testimony at trial as to what her intention was at the time of the conveyance of the tract to the defendant, and what she purportedly said to him about retaining the title to the easement, is not controlling and flies in the face of the parol evidence rule. "[N]o principle is better established than that which forbids the introduction of parol evidence to contradict or vary a deed." *McIlvaine v. Harris*, 20 Mo. 457 (1855); Anno: Parol Evidence-Reservation-Exception, 61 A.L.R.2d 1390 (1958).

"It is a well-settled canon of construction that, in construing a deed or any other written instrument whose terms are susceptible of more than one meaning, it is proper to place the court in the position of the parties thereto at the time the instrument was executed, and to show what was subsequently done by the parties themselves in carrying out the contract, as showing their understanding of its provisions. [Citations omitted]. The rule is thus stated .... 'In expounding a written contract, although parol evidence is not admissible to prove that other terms were agreed to which are not expressed in the writing, or that the parties had other intentions than those to be inferred from it, yet it is competent to offer parol evidence to prove facts and circumstances respecting the relations of the parties, and the nature, quality, and condition of the real and personal property, which constitute the subject matter respecting which it is made. It is also competent to prove by parol evidence— indeed, it can hardly be done by any other—the acts of the parties at and subject to the date of the contract, as a means of showing their own understanding of its terms.'" *Carter v. Foster*, 145 Mo. 383, 392, 47 S.W. 6, 8 (1898).

■ The rule in Missouri is that in considering an exception in a deed, the language used in the deed must be considered with reference to the subject matter and

2. The deed also excepted a metes and bounds description containing ten acres in the southeast corner of the fractional quarter, across the road from plaintiff's house. Contemporaneous with the sale of the property the parties entered into a contract to exchange this ten acre tract for another described ten acre tract in the same general area, the exchange being conditioned upon the construction of the proposed new river channel.

the circumstances of the particular case. *Snoddy v. Bolen,* 122 Mo. 479, 24 S.W. 142, 25 S.W. 932, 24 L.R.A. 507 (banc 1894). In addition, there is a strong, and virtually uniform, rule presuming an intention to convey the fee to an area burdened by an easement when adjoining or embracing plots are conveyed, unless *clearly* excepted. This rule is very much the same as that which vests in lot owners generally the fee title to the center of an adjoining street. In such a case, it has been said:

> " 'The presumption is that the grantor did not intend to withhold any interest in the street or highway. The presumption may be overcome, but it must be overcome by something stated in the deed, which shows clearly and distinctly an intention to withhold an interest in the street.' " *St. Louis County v. St. Appalonia Corporation,* 471 S.W.2d 238, 243 (Mo.1971).

The foregoing rule has been analyzed to rest upon two related grounds. First, that interpretation gives effect to what is almost certainly the intention of the parties. Second, there is a sound public policy discouraging the separate ownership of narrow strips of ground. *Abbott v. Pearson,* 257 Ark. 694, 520 S.W.2d 204 (Ark.1975). The "strip and gore" rule, and the companion rule of the probability of intention, have long been acknowledged by the courts of this state. The *Snoddy* case, supra, says:

> "The rule is of the utmost importance, and is necessary to prevent *afterthought, strifes* and *litigation* . . . over detached strips and gores of land, generally of no value to anyone save the lot owner. In the vast majority of cases the rule works out the real intention of the parties at the date of the deed." 122 Mo. at 488–489, 25 S.W. at 934. (Our emphasis).

In a later case our supreme court said: " 'The evils resulting from the retention in remote dedicators of the fee in gores and strips . . . have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots.' " *Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649, 656, 136 A.L.R. 286 (1941), quoting *Paine v. Consumers' Forwarding & Storage Co.,* 71 F. 626, 632 (6th Cir. 1895) (frequently-used quote from later Chief Justice Taft).

■■■ The general rule that grants are liberally construed against the grantor, with the accompanying policy against preserving detached gores and strips in grantors, has been held to be "especially vigorous in operation, where, as here, a construction is contended for which would produce the unreasonable result of splitting into two pieces a tract of land, which existed as one tract, subject only to an easement, and which, in reason, must be considered to have been conveyed as such, and not to have been split into separate parts, with a thin wedge of land between." *Shell Petroleum Corporation v. Ward,* 100 F.2d 778, 779 (5th Cir. 1939).[3] Thus, a conveyance of a parcel will carry, absent clearly expressed intent, the fee of a strip (or to the middle of the strip) if the strip either borders or bisects the parcel, and may be more certain in the latter situation. A corollary rule is that a grant of land with full covenants of warranty, which definitely describes the land conveyed, and then excepts or reserves a roadway for the use of the public, or a railroad or other right of way, as such, occupying a mere easement on, over, or across the land conveyed, conveys the fee to the entire tract subject to the easement reserved.[4] 26 C.J.S. Deeds § 135 (1956). "Such language may be intended to except

---

**3.** In the *Shell Petroleum* case, a grantor by the deed conveyed a tract of land by metes and bounds. The deed read in part, "containing 162.00 acres of land save and except therefrom 5.6 acres taken up by the rights of way of the Neches Canal Company lateral, making 156.4 acres herein and hereby conveyed." When the canal company abandoned its project, the grantor claimed the 5.6 acres. The court, applying the principle that exceptions are con-

strued against the grantor, held the grantee was entitled to the 5.6 acres when abandoned. 100 F.2d at 779.

**4.** "Easement" may not always be technically correct, but is often used to describe the right of way, or special use, granted to a government, railroad or the like. See *Springs v. Cantrell,* 539 S.W.2d 318, 320 n. 2 (Mo.App.1976).

the easement from the grantor's warranty rather than to reserve the entire servient estate to the grantor." *Abbott v. Pearson*, supra, 520 S.W.2d at 208; *Haines v. McLean*, 154 Tex. 272, 276 S.W.2d 777 (1955).

In *Brown v. Weare*, supra, probably the leading case in this jurisdiction, the deed excepted " 'the right of way 100 feet wide and the station grounds.' " The court construed the term "right of way" to mean only the easement right on the actual strip of land and noted that the term "except" does not always mean a technical exception to the fee estate granted, and held the excepting clause meant that the tract was subject to the easement for the right of way and station grounds and did not except the fee itself. The court said: "We cannot conceive that it was the intention of the grantor to retain the title to the servient estate in the strip over which the right of way ran while disposing of the abutting land." 348 Mo. at 145, 152 S.W.2d at 656.[5]

■ Here, the exception in plaintiff's deed was directed to the right of use to the strip by the condemning authority for certain designated purposes. The owner of the servient estate was authorized by the terms of the easement to utilize the strip so long as such use did not interfere with the government's use. The easement split the fractional quarter in a diagonal manner, leaving 47 acres east and 29 acres west of the strip. Plaintiff's contention that she intended to retain the underlying fee in the strip "would produce the unreasonable result of splitting into two pieces a tract of land, which existed as one tract, subject only to an easement . . . with a thin wedge of land between" [*Shell Petroleum Corp. v. Ward*, supra] and "result in a ridiculous situation" [*State ex rel. State Highway Commission v. Jacob*, supra note 5]. Further, such a contention is contrary to express public policy and appears to be an afterthought which spawned this litigation.

*Snoddy v. Bolen*, supra; *Brown v. Weare*, supra. We are of the opinion, and hold, that the subject exception did not reserve the underlying fee in the strip and that plaintiff's deed conveyed such interest to the defendant, subject to the use of the strip by the United States.

The subsequent conduct of the parties to the deed strongly indicates that they placed the same construction on the exception as ours. Defendant went into possession of the entire tract and cut and sold the timber therefrom. Plaintiff was present when the timber cutter was told the "stumpage" was to be paid to the defendant and voiced no objection. Plaintiff saw defendant, with bulldozers and land clearing equipment, clearing the tract, including the easement area, and planting and harvesting crops from the tract. Neither she nor her attorney, her nephew, raised any question about defendant's clearing and farming the strip when the parties conveyed in July 1977, for the purpose of defendant's payment of the balance due on his purchase and the release of his deed of trust. In reply to questions by the court she stated she did not consider the strip to have any value at the time of the condemnation or when she sold the tract to the defendant. She acknowledged that after the condemnation proceedings were instituted she prevailed upon the county court to exclude the strip from taxation, and there was evidence that subsequent to her conveyance to the defendant that she accompanied him to the county court for the purpose of having the strip taxed in his name. She testified that sometime subsequent to the release of the deed of trust she heard rumors that the government was not going to dig a new river channel and someone had suggested she had an interest in the strip. The first inkling that she was claiming the underlying fee to the strip was when her attorney-nephew notified the defendant of such claim shortly before this lawsuit was filed.

**5.** Accord: *Springs v. Cantrell*, supra note 4, 539 S.W.2d 318; *Hennick v. Kansas City Southern Ry. Co.*, 269 S.W.2d 646 (Mo.1954); *Stotzenberger v. Perkins*, 332 Mo. 391, 58 S.W.2d 983 (1933); *Carter v. Foster*, 145 Mo. 383, 47 S.W. 6 (1898). "[T]he Schuermann Company's contention that it retained title to the fee in the land occupied by the street by reason of the reservation in the dedication would result in a ridiculous situation." *State ex rel. State Highway Commission v. Jacob*, 244 S.W.2d 7, 9 (Mo.1951).

The judgment of the trial court quieting the title to the strip of land, subject to the easement of the United States, is affirmed.

All concur.