KIMBERLING NORTH, INC., Jimmy Richardson, Wanda Fay Richardson, Tona Fay Richardson and James Main, Plaintiffs–Respondents,

v.

James T. POPE and Mary E. Pope, Husband and Wife, Bruce G. Keil, Paula J. Keil, Nancy L. Keil and Mark A. Keil, Defendants–Appellants.

No. 24860.

Missouri Court of Appeals, Southern District, Division One.

March 27, 2003.

Richard L. Schnake, Neale & Newman, L.L.P., Springfield, for appellant.

J. Patrick Sullivan, Branson West, for respondent.

PHILLIP R. GARRISON, Judge.

James T. Pope, Mary E. Pope, Bruce G. Keil, Paula J. Keil, Nancy L. Keil and Mark A. Keil ("Appellants") appeal from a judgment entered by the trial court in favor of Kimberling North, Inc. ("Kimberling North"), Jimmy Richardson, Wanda Fay Richardson, Tona Fay Richardson and James Main ("Respondents"). The judgment declared, *inter alia,* that Kimberling North is the owner in fee of a disputed strip of land, that Respondents should be allowed to maintain that strip of land as a roadway, and that Appellants were enjoined from interfering with ingress and egress on or along that roadway. Appellants also were ordered to remove two buildings that the court found encroached upon the disputed strip of land. On this appeal Appellants allege, in two points,

that the trial court erred in quieting title to the disputed land in Kimberling North in fee, and in finding that the two structures encroached upon the disputed tract of land and must be removed. Both points advanced by Appellant are well taken; the judgment of the trial court is reversed.

Kimberling North is a Missouri corporation formed in 1973. Its business primarily involves subdividing and selling land in Stone County, Missouri. During the time pertinent to this appeal, its efforts were focused on an area north of Kimberling City, Missouri near Missouri Highway 13. In December 1973, Kimberling North acquired 704 acres in that area, including the land in dispute here. It platted part of that acreage into Kimberling Northeast subdivision and left part unplatted. Kimberling Northeast subdivision lies north of Highway 13 on both sides of a road that branches north from Highway 13. The unplatted land was divided into various "lot tracts." Those tracts include Tracts 13, 14, and 15, which Appellants' predecessors in interest purchased from Kimberling North, and which Appellants now own.

In 1979, Kimberling North advertised its land holdings north of Highway 13 by way of a handbill that depicted the relative locations of the platted and unplatted tracts. The handbill showed a road running generally north from Highway 13, then turning northwest. Bobby Richardson, who was at the time a shareholder in Kimberling North, testified that this "deeded" road ended just south of Tracts 13, 14 and 15. Tracts 13, 14, and 15 lie northeast of the "deeded" road and along the east side of the undeeded continuation of that road.

Shortly after its land acquisition, but before it platted Kimberling Northeast subdivision and divided the unplatted land into tracts, Kimberling North sold a tract of approximately 9.7 acres to a couple

named Hugren. In preparation for that conveyance, Bobby Richardson "went down and staked" the property to be sold, as well as Tracts 13, 14 and 15. The 9.7–acre tract lies west across the road from Tracts 13 and 14 and was described in the deed to the Hugrens by a metes and bounds description. The description began at a specified point, then tracked west, north, east, and finally south on a bearing of S22° 17'E a distance of 646—feet a southeast-to-northwest bearing that is important in this case.

Wayne Spainhour ("Spainhour") surveyed Tracts 13, 14 and 15 on April 10, 1981, using as reference points the stakes Bobby Richardson had set earlier. The Spainhour survey showed the undeeded road running northwesterly along the western boundary of Tracts 13, 14 and 15. From a point south of Tract 13 to a point at the boundary between Tracts 14 and 15, the survey showed the road bearing N22° 17'W a distance of 646 feet. For that measurement, therefore, it showed the same southeast-to-northwest bearing and distance as did the deed to the Hugrens.

Appellant Mary Evelyn Pope ("Evelyn") was formerly married to Melvin Keil, who died in 1992. Together, they bought Tracts 13, 14, and 15 from Kimberling North on August 27, 1981. The deed to the Keils was prepared from the Spainhour survey, which bears the notation "81–50 Brooks" and was prepared and attested by Thomas Brooks, a lawyer and the Secretary–Treasurer of Kimberling North. Below his signature on the copy of that deed is the handwritten notation "81–50." The deed contains the following legal description:

All of Tracts Thirteen (13), Fourteen (14) and Fifteen (15) located North of the Kimberling Northeast Subdivision and legally described as follows:

A tract of land situate in the County of Stone, State of Missouri, being a part of the East ½ of the Southwest ¼ and a part of the West ½ of the Southeast ¼ of Section 22, Township 23N, Range 23W described as follows:

*Beginning at a point on the center line of an existing road,* said point being North 1012.24' and West 335.88' from the Southeast corner of the Southeast ¼ of the Southwest ¼; *thence North 22° 17'W along center line 646.00';* thence North 50° 44W along center line 392.62'; thence North 89° 43E 1065.97' to the approximate center of a ravine; thence Southeasterly along ravine 907.00'±; thence West 774.60' to the point of beginning; containing 15.0 acres, more or less; *subject to a 20.00' road easement at West boundary.*

Subject further, however, to easements, restrictions, reservations and covenants of record, if any.

(emphasis added). That legal description matches the description shown on Spainhour's survey.

After Melvin Keil died, Evelyn and James Pope were married. They conveyed Tracts 13, 14 and 15 to themselves, as husband and wife, by a deed recorded in Book 227, Page 135 of the records of the Stone County Recorder's Office. Subsequently, they conveyed the bulk of the land by deed to Evelyn's children, Bruce Keil, Paula Keil, Nancy Keil, and Mark Keil, reserving 1.08 acres for themselves on Tract 13. Both deeds contained the same southeast-to-northwest bearing of N22° 17'W for a distance of 646 feet that appeared in the original deed from Kimberling North to the Keils.

As noted above, Bobby Richardson staked Tracts 13, 14, and 15 before Spainhour surveyed them. Richardson testified that, at the time, Kimberling North owned 120 acres "beyond" (presumably, north of)

those tracts. Thus, he said, when he drove the stakes he considered ingress and egress to the other 120 acres, saying he wanted a forty-foot-wide access for ingress and egress.

The deed to the Hugrens conveying the 9.7 acres west of Tracts 13 and 14 did not mention a roadway. There is, however, an approximately twenty-foot gap between the eastern boundary of the Hugren property and the western boundary of Appellants' Tracts 13 and 14, which is apparent from the deeds. The deeds locate the starting points of both properties with reference to the southeast corner of the southeast quarter of the southwest quarter of Section Twenty-two. The Hugren property begins "at a point which is North 1012.4' [sic] and West 357.45' from the SE Cor[ner] of said SE $^4$ SW $^4$." Appellants' Tracts 13, 14, and 15 begin at a point on the centerline of an existing road, "said point being North 1012.24' [sic] and West 335.88' from the Southeast corner of the Southeast ¼ of the Southwest ¼." Thus, to locate the starting point of the Hugrens' property, which lies west of Appellants' property, one must go 21.57 feet farther west from the quarter corner than one must go to locate the starting point of Appellants' property. The distance from those points north is virtually identical: 1012.4 feet and 1012.24 feet respectively, a difference of 16/100 of a foot, or 1.92 inches. The southeast-to-northwest bearings and distances from those respective points also are the same—N22° 17'W and S22° 17'E respectively, and 646 feet. Hence the gap between the eastern boundary of the Hugren property and the western boundary of Appellants' property is approximately twenty feet. It appears, therefore, that together that gap and the twenty-foot-wide easement on the western

boundary of Appellants' property constitute the forty-foot-wide ingress and egress to Kimberling North's 120 acres to the north with which Bobby Richardson was concerned.

Evelyn testified that the undeeded road between the Hugrens' property and Tracts 13 and 14 was there when she and her former husband bought the latter. According to Evelyn, "that road was the only road there[.]" There was not, however, a recorded document describing the road, and Bobby Richardson testified that the "road" referred to by Evelyn consisted of nothing more than a horse trail.

Evelyn testified she was aware of the reservation of the "[twenty-foot] road easement" on the western boundary of Tracts 13, 14 and 15 when she and her husband bought them. She believed her property line lay along the centerline of the existing undeeded roadway, and that "they could come back 20 feet from that center to make a roadway if they needed to for other people to travel." Mark Keil expressed a similar understanding

The disputed land was improved with four buildings, three of which still exist. In November 1988, Appellants built a 48' × 31' metal shop building, or pole barn. In March 1992, Appellants set on the property a 12' × 60' mobile home, in which Mark Keil now resides. In 1995, Evelyn and James Pope built the house in which they now live, located on the 1.08 acres they had reserved for themselves on Tract 13.[1]

Dorance Borst ("Borst") built the metal shop building. Before he did so, he attempted to determine where to put the building on the property. Appellants called Spainhour and asked him to position the building in order to make sure it did

---

1. The fourth building, a 27' × 49' house, was a double-wide mobile home that the Popes subsequently sold. It no longer is located on the property.

not encroach on any right-of-way or easement. Borst erected the building after working with Spainhour to establish where he could do so. Evelyn was present when Spainhour was there to advise Borst. Spainhour told Borst where to put the stakes, and Evelyn testified she "heard [Spainhour] say something about moving the stake back in order to—not to get too close to the roadway." Borst testified that Spainhour "proceeded to find a pin and with a compass tell us which direction to go and where to drive in the next stake to find the right-of-way." Borst could not drive in one of the stakes because he found that he was trying to drive it into the middle of an existing stake, which he thought was an old survey stake. That point was east of the traveled roadway, so Spainhour guided Borst farther east. Evelyn testified that Spainhour

> ordered us to move east, I would say, towards the Keil property, I don't remember whether it was eight, ten or twelve feet, but it was in that area and drive another stake, which we did. And once we established that one, then he told us to go a certain angle on his compass over into the Keil property, the width of the building, and we drove another one. He then gave us the square root of the building and we set the other two stakes.

Spainhour "even lined up with what existing light poles were there," since light poles normally sit on the property line, in order "to make sure" that the building was outside any roadway or easement.

When Appellants set the mobile home on the property in March 1992, the contractor also measured the distance from the road. Evelyn testified that "[t]hey walked it off, the contractor that brought the trailer down and set it up for us. They walked it off and measured it." Thus, Appellants thought that the mobile home

was well outside the roadway. When the Popes later built their house in 1995, the building contractor also checked to make sure that the house did not encroach on any easement. In attempting to situate these buildings, Appellants believed that the only easement boundary of concern was twenty feet from the center of the existing traveled road. Appellants have, at all times pertinent here, maintained Tracts 13, 14 and 15 up to the existing roadway.

Jimmy Richardson is Bobby Richardson's brother and was, at one time, a shareholder in Kimberling North. On June 7, 1993, Kimberling North executed a "Grant of Road Right of Way" in favor of Jimmy Richardson, who owned land north of Tracts 13, 14, and 15. Bobby Richardson explained that the property "was landlocked so Kimberling North deeded him right-of-way to get to it." Jimmy agreed that the grant was for that purpose.

The grant contains the same southeast-to-northwest bearing of N22° 17'W as do the deeds describing the western boundary of Appellants' property. It grants

> a right of way for road purposes for ingress and egress over a strip of land 40 feet in width, the centerline of which is described as:

> Beginning at the centerline of the Northernmost extension of the roadway shown on the plat of Kimberling Northeast Subdivision ...; thence North 35° 43' West 95 feet along said centerline; *thence North 22° 17' West 131.15 feet along said centerline; thence continuing in a northwesterly direction along said centerline to the Northwest corner of a tract conveyed to Keil at Book 158, Page 380, Stone County Recorder's Office.*

(emphasis added).[2]

John Read ("Read") is a Kimberling City surveyor, the second successor to Spainhour at United Surveying Associates. In 1997, he prepared a survey for Bobby Richardson and Kimberling North, who asked him "to create a property description for a 40–foot road easement." Read began his work by researching recorded deeds and his office files, which included Spainhour's previous work. He sought out "the intent taken from other work that my predecessors did and property descriptions to come up with the past acts of what they did." He also looked for "certain documents that affected the property, either adjoined it or more specific documents of the property," for the law requires him to use them. "The books and pages, those are the documents that are recorded that I'm not going to question," he said. "I may find something wrong with them, but they are the recorded documents that I must use."

Read reviewed the original deed to the Keils. He noted its recital that the land was "subject to a 20–foot road easement at west boundary" and apparently reviewed the subsequent deed by which the Popes conveyed the land to themselves as husband and wife, since he referenced "Book 227, Page 135" on his survey. The book and page references were, he testified, "an important part" of his consideration in coming up with the legal description. Read also reviewed Spainhour's survey, from which the legal description in the Keils' original deed derived. He did not say whether he reviewed the 1993 right-of-way grant from Kimberling North to Jimmy Richardson.

After conducting his initial research, Read went to the location to be surveyed.

He found the pins shown on Spainhour's drawing and was able to determine "the natural location of the roadway as located by the pin on the ground."

The legal description on his survey did not, however, match Spainhour's earlier survey, the original Keil deed, or the subsequent Pope and Keil family deeds. Specifically, there was no reference to the southeast-to-northwest bearing of N22° 17'W; instead the call was N22° 31'29"W. The description reads as follows:

> A part of the east half of the Southwest Quarter of Section 22, Township 23 North, Range 23 West, Stone County, Missouri, being more particularly described as being 40.00 feet in width and lying 20.00 feet each side of a centerline described as: Beginning at the southeast corner of said Southwest Quarter, thence North 00 Degrees 00 Minutes 00 Seconds West 908.06 feet, thence North 90 Degrees 00 Minutes 00 Seconds West 309.88 feet to the true point of beginning of the herein described centerline, said true point of beginning being an existing bolt at the centerline of an existing roadway, *thence North 22 Degrees 31 Minutes 29 Seconds West 763.89 feet,* thence North 49 Degrees 57 Minutes 50 Seconds West 402.92 feet to the point of terminus of the herein described centerline. Sidelines of easement to be shortened or lengthened so as to terminate at the appropriate line. Subject to any and all encumbrances, recorded or unrecorded.

(emphasis added). Read testified that this description is "consistent with" the location of the road shown on Spainhour's earlier survey, but did not testify that the two

---

**2.** The original deed to Evelyn and Melvin Keil was recorded in Book 158, Page 380 of the

Stone County Recorder's Office records.

descriptions locate the road in the same place.

Respondents filed this suit in 1997, some sixteen and one half years after Kimberling North sold Tracts 13, 14, and 15 to the Keils. The land described in Read's survey was the land Respondents put in controversy. In Count I, Kimberling North alleged that it owned a forty-foot strip of land "intended for and utilized in part for roadway purposes." That strip is described differently in the petition than is the road easement in Appellants' deeds, since it was based upon Read's "N22° 31′29″W" bearing. Kimberling North claimed that the strip abuts Appellants' property and alleged that Appellants "have attempted to assert an ownership interest" over it. It sought to quiet title to the strip in Kimberling North. In Counts II and III, Respondents Richardson and Main sought an order allowing them to maintain the roadway described in the petition and enjoining Appellants from interfering with its maintenance and use.

During the pendency of the suit, in 2000, Read created a second survey, a so-called "Location Survey," at Respondents' request. That survey shows both what Read determined to be the forty-foot easement and a dashed line showing the centerline of the existing "traveled roadway," which veers steadily northwest of the forty-foot easement as it is depicted by Read. It also depicts encroachments by Appellants' metal shop building and Mark Keil's mobile home onto the easement. Significantly, this survey does not use the same southeast-to-northwest bearing for the easement that appears on Read's original survey, i.e. N22° 31′29″W. Instead, it uses the call that appears on the earlier documents to describe the western boundary of Appellants' property—S22°17′00″E. For reference, a copy of the survey is attached to this opinion.

The second Read survey's depiction of encroachments is at odds with Read's testimony about encroachments on the right-of-way that Kimberling North granted to Jimmy Richardson in 1993. That right-of-way contains the same southeast-to-northwest bearing—N22° 17′W—along the centerline of the road, running "to the Northwest corner of a tract conveyed to Keil at Book 158, Page 380." However, although he surveyed that bearing in the "Location Survey," Read said that he had not surveyed the Richardson right-of-way description and, therefore, would not render an opinion whether there were any encroachments onto it.

In estimating the size of the encroachments that appear on the "Location Survey" Read, in one instance, testified that the shop building overlaps the easement "two or three feet," and in another he said that it overlaps "[t]hree maybe five feet." He said that the trailer overlaps the easement "[t]en to [twelve] feet." Read did say, however, that neither of the buildings encroaches if the centerline of the roadway easement is the centerline of the existing road.

The trial court found that Kimberling North owns fee title to the land described as the forty-foot easement on Read's initial survey. It decreed

that title to the premises in [Read's initial survey] is hereby quieted and vested in [Kimberling North] and any claim by [Appellants] is divested from them except the [Appellants] shall have a right of usage over the same upon construction of a roadway.

Accordingly, the court ordered Appellants to move the metal shop building and the mobile home. It ordered Appellants to "move the 12′ × 60′ trailer not less than 20 feet from said described roadway to the east with the same to be completed not later than six months from the date of

entry of this Judgment." It also ordered them to "remove the 48′ × 31′ [shop building] from said described roadway with said removal to be completed no later than one year from the date of entry of this Judgment." The court also enjoined Appellants from "encroaching upon, parking cars or placing other structures or personalty upon the described premises" and from "interfering with the ingress and egress of [Respondents] upon any roadway actually constructed upon the premises."

In one of Appellants' two points,[3] they allege that the trial court erred in finding that two buildings encroached upon the roadway easement and in ordering that they be moved in that

> (a) the only evidence of any encroachment by those buildings is upon an easement call of an unspecified length at a bearing of S22° 17′00″E; (b) the trial court found, however, that the road instead bears N22° 31′29″W a distance of 763.89 feet; (c) the difference between the two bearings is 14′29″, or approximately a quarter degree; and (d) the difference in the location of the easement boundary between the two surveys is a material one, given the distance of 763.89 feet in the trial court's legal description and the fact that the encroachments to which the surveyor testified are slight, even assuming that the surveyor's guesswork is correct with respect to the size of the encroachments.

■ "The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Ryan v. Spiegelhalter*, 64 S.W.3d 302, 305 (Mo. banc 2002) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).[4] While we give due regard to the ability of the trial court to judge the credibility of witnesses, this rule of deference does not apply where, as is often the case here, the facts derive from written documents or exhibits. *Farmers and Merchants Ins. Co. v. Harris*, 814 S.W.2d 332, 334 (Mo.App. S.D. 1991). We have applied this principle before in a case similarly replete with "evidence ... documentary in nature [and] consisting of plats, diagrams, aerial photographs, maps, and assessor's office records." *Earls v. Majestic Pointe, Ltd.*, 949 S.W.2d 239, 244, 246 n. 9 (Mo.App. S.D. 1997).

■ The evidence includes two significant northwest-to-southeast bearings purporting to describe both the eastern boundary of the road right-of-way claimed by Kimberling North and the western boundary of Appellants' property. The first such bearing, N22° 17′W or, alternatively, S22° 17′00″E, appears in the original deed granting Tracts 13, 14 and 15 to the Keils, the Spainhour survey upon which this deed was dependent for its description, the subsequent deed from the Popes granting title to most of those tracts to their children, and the "Location Survey" done by Read at the behest of Respondents during the underlying suit's pendency. This bearing also appears in the deed describing the eastern boundary of the 9.7 acres west of Tracts 13 and 14 granted to the Hugrens by Kimberling North in 1974.

---

**3.** For ease of discussion, we first consider Appellants' second point.

**4.** *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d), Missouri Rules of Civil Procedure (2002).

The second bearing, N22° 31′29″W, appears in the evidence but once; the initial survey performed by Read in January 1987 utilizes this bearing in describing the road easement at issue. Significantly, it is this survey, containing the sole reference to an easement bearing N22° 31′29″W, that Respondents put in issue in the trial court by incorporating it by reference in their petition to quiet title to the easement. The trial court similarly relied on the description contained in this survey in finding that Respondents owned the disputed strip of land in fee. Specifically, the trial court found "[a]s to Count I of the Consolidated Petition ... that Plaintiff [Kimberling North] is the owner of that tract described in [Read's 1987 survey] and referred to as 40.00 Foot Roadway Easement Description a copy of same is attached ... and incorporated by reference."

■ While the trial court made no specific finding of fact concerning any encroachment on the easement described in Read's 1987 survey, it ordered that the 12′ × 60′ trailer and the 48′ × 31′ pole barn be moved "not less than [twenty] feet" from the easement as described therein. In the absence of findings of fact in a court-tried case, a trial court is presumed to have found all disputed issues in accordance with the result reached. *Stoutimore v. Stoutimore*, 684 S.W.2d 344, 345 (Mo.App. W.D.1984).

The trial court's implied finding that Appellants' buildings encroached on the easement described by Read in his initial survey and incorporated in Respondents' pleading was error.

The only evidence we find in the record supporting a finding that any building encroaches on an easement presupposes a bearing of N22° 17′W. Specifically, only the "Location Survey" done by Read in 2000, and his testimony concerning that survey, supports the trial court's finding of encroachment. Nothing in the record shows an encroachment on an easement bearing N22° 31′29″W, which is the bearing pleaded by Respondents and adopted by the trial court as the correct bearing of the easement. Appellants are correct, therefore, in their contention that the trial court's finding in this regard is "devoid of evidentiary support."

■ In response to Appellants' argument, Respondents suggest to this court that "[e]ven if the 'calls' [in Read's two surveys] are not perfectly identical, [they] are substantially the same" and that Read's identification of what he labeled "Point Two" on the two surveys as identical "serves as internal check [sic] on the relative accuracy of the documents[.]" We find this "close is good enough" argument unpersuasive. The law of property is bottomed, in part, on the proposition that all land is unique. *See Wilkinson v. Vaughn*, 419 S.W.2d 1, 5 (Mo.1967); *Peet v. Randolph*, 33 S.W.3d 614, 621 n. 2 (Mo.App. E.D.2000). Whether the "[p]oint number two" referenced by Respondents is in fact identical in both Read surveys is immaterial; two different directional bearings from that point are described in those surveys, resulting in two less-than-identical property descriptions. One of those descriptions was adopted by the trial court as correct, the other was the only description of an easement concerning which any evidence of encroachment was presented. We cannot judicially merge after the fact two descriptions of two different strips of land because they are "substantially the same" in order to cure what to us is apparent error. The trial court's judgment is reversed insofar as it found that two of Appellants' buildings encroached on the road easement and ordered them removed therefrom.

In Appellants' remaining point, they allege that the trial court erred

by determining that [Kimberling North] owns fee title to the [easement described in Read's initial survey] and by quieting title to that strip in [Kimberling North] because [Kimberling North] did not reserve fee title when it conveyed Tracts 13, 14 and 15 to [Appellants'] predecessors, in that the deed to [Appellants'] predecessors expressly states that the tracts are subject to only a [twenty foot] "road easement" on their western boundary.

▇▇▇ Fee title "is an estate without end or limitations and the largest estate a person can possibly have." *Long v. Kyte,* 340 S.W.2d 623, 630 (Mo.1960). By contrast, an easement is "the mere right of a person to use for a definite purpose another's land in connection with his [or her] own land." *Mahnken v. Gillespie,* 329 Mo. 51, 43 S.W.2d 797, 800–01 (1931). An easement therefore "is not the complete ownership of land with the right to use it for all lawful purposes perpetually and throughout its entire extent," but, instead, is a right that extends "only to one or more particular uses." *Farmers Drainage Dist. of Ray County v. Sinclair Refining Co.,* 255 S.W.2d 745, 748 (Mo.1953).

▇▇▇ The "expression or limitation of the use to which the property is to be put is a decisive factor in determining if it is an easement or the grant of a fee." *G.M. Morris Boat Co., Inc. v. Bishop,* 631 S.W.2d 84, 88 (Mo.App. S.D.1982). "The intention of the grantor is to be determined by the language contained in the deed unless an ambiguity exists." *Robert Jackson Real Estate Co., Inc. v. James,* 755 S.W.2d 343, 346 (Mo.App. E.D.1988).

▇▇▇ Absent "clearly expressed intent," a conveyance carries the fee of a strip of land if the strip borders the parcel. *Cravens v. Jolly,* 623 S.W.2d 569, 572 (Mo.

App. S.D.1981). Correspondingly, a grant "with full covenants of warranty, which definitely describes the land conveyed, and then excepts or reserves a roadway ... or other right of way, as such, occupying a mere easement on, over, or across the land conveyed, conveys the fee to the entire tract subject to the easement reserved." *Id.* If the parties intend to reserve fee title in the grantor they must, therefore, "clearly provide" for it "and show this is their intention." *Robert Jackson Real Estate* at 346. The presumption is that the grantor does not intend to withhold any interest in a road, and to overcome the presumption there must be "something stated in the deed, which shows clearly and distinctly an intention to withhold" the interest. *Cravens* at 572.

▇▇▇ Appellants argue that the original deed from Kimberling North to the Keils explicitly reserved an easement and explicitly conveyed the fee to all of Tracts 13, 14 and 15. They point specifically to the fact that Kimberling North recited in that deed that it was "lawfully seized of an indefeasible estate in fee in the premises" conveyed. Moreover, Appellants note, the granting clause used the words "grant, bargain and sell," which represent the vesting of fee simple title, § 442.420;[5] *Nixon v. Franklin,* 289 S.W.2d 82, 88 (Mo. 1956), and the deed also explicitly stated that the title was "subject to" a road "easement."

*Robert Jackson Real Estate* is particularly instructive on this point. That case considered the ownership of a private road abutting the plaintiffs' land and serving the defendants' land. *Id.* at 344–45. The parties' common predecessors in interest conveyed the plaintiffs' portion, reserving for the defendants a "private Road, fifteen feet wide, now located, and in use by [the

---

5. References to statutes are to RSMo (2000)     unless otherwise indicated.

defendants], across above described land." *Id.* at 345. The trial court ruled that the defendants owned the private road in fee and had the exclusive right to use it. *Id.* The court of appeals reversed, holding that the plaintiffs owned the fee and that the defendants had only a nonexclusive easement. *Id.* at 346–47.

The court looked to the common meaning of the term the grantor used to express his intent. It noted that the word

'road' or 'roadway' has seldom, if ever, been defined to mean land, but indicates a right of passage. Missouri courts have justified this doctrine by pointing out [that] "long narrow strips of land serve little or no function other than for roads or rights of way." Unless the parties clearly provide for title in fee simple and show this is their intention, *the presumption is that they did not* intend to create an otherwise unusable interest in land.

*Id.* at 346 (internal citations omitted). Thus, the court said, the "apparent intention of the original grantors was to reserve and warrant an easement to themselves and not a title in fee simple." *Id.*

This court confronted a similar scenario in *Cravens.* There the plaintiff's land was burdened with an easement that the federal government had condemned on a strip of land for a river project. *Id.* at 570. The easement allowed the owners, and their heirs and assigns, to exercise rights and privileges in the land not interfering with or abridging the government's rights in the easement. *Id.* The plaintiff conveyed the land to the defendant "except that part heretofore conveyed to the U.S.A." *Id.* at 571. When the defendant cut and sold timber from the strip, and planted and harvested crops on it, the plaintiff filed a quiet title suit. *Id.*

We affirmed the trial court's ruling for the defendant. We noted the "strong, and virtually uniform, rule presuming an intention to convey the fee to an area burdened by an easement when adjoining or embracing plots are conveyed, unless clearly excepted." *Id.* at 572. We also noted the "sound public policy discouraging the separate ownership of narrow strips of ground." *Id.* Thus, we said, the "evils resulting from the retention in remote dedicators of the fee in gores and strips ... have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots." *Id.* We held that, because the deed excepted only the government's right to use the strip for the designated purposes, the exception did not reserve the fee to the plaintiff. *Id.* at 573.

Appellants contend that the deed language at issue under this point more clearly shows an intent to convey the strip in question in fee than did the deeds in both *Robert Jackson Real Estate* and *Cravens,* where such an intent was found. We agree. The grantor in *Robert Jackson Real Estate* "reserved" the private road, and the grantor in *Cravens* "excepted" the easement. Here, Kimberling North explicitly stated that Tracts 13, 14, and 15 were "subject to a [twenty foot] road easement." Appellants argue, persuasively, that "[i]f *Robert Jackson Real Estate* and *Cravens* involved only easements, then, the interest in dispute here can certainly be nothing more."

For these reasons, the trial court erroneously applied the law in quieting title to the strip of land in question in Kimberling North. The deed here conveyed Tracts 13, 14, and 15 in fee to the Keils, subject to an easement. The trial court's judgment in this regard must be, and is hereby, reversed. *Ryan* at 305; *Murphy* at 32.

The judgment of the trial court is reversed.

RAHMEYER, C.J., and BARNEY, J.,
concur.