**Burt Alan GINSBURG, M.D., Appellant,**

v.

**CHERNOFF/SILVER & ASSOCIATES, INC., Appellee.**

**No. 01–02–01118–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 8, 2004.

---

Katherine D Mackillop, Fulbright & Jaworski L.L.P., Houston, TX, for Appellant.

Illeana M. Blanco, Bradley Jason Benoit, Bracewell & Patterson L.L.P., Houston, TX for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

TERRY JENNINGS, Justice.

Appellant, Burt Alan Ginsburg, M.D., challenges the trial court's rendition of summary judgment on third-party claims that Dr. Ginsburg asserted against appel-

lee, Chernoff/Silver & Associates, Inc. (Chernoff), in the divorce proceedings between Dr. Ginsburg and his ex-wife, Susan Deena Ginsburg (Susan).[1] In two issues, Dr. Ginsburg contends that the trial court erred in granting (1) summary judgment on his claims against Chernoff for conversion, conspiracy to convert, fraud, and conspiracy to defraud and (2) Chernoff's motion to strike Dr. Ginsburg's third amended petition, which denied him leave to amend his pleadings to add additional claims.

We affirm.

### Facts and Procedural Background

The Ginsburgs were married in 1981 and, during the course of their marriage, had two children. For several years after Dr. Ginsburg and Susan were married, Susan worked for Chernoff, a public relations and advertising company. Susan subsequently left Chernoff and established her own public relations company, Global Communications Works, Inc. (Global).[2] Global continued to do business with Chernoff and relied on Chernoff as a vendor for production services and media buying.

In August 2001, Dr. Ginsburg filed an original petition for divorce and, in December 2001, Susan filed a counterpetition for divorce. In April 2002, Dr. Ginsburg filed a second amended petition for divorce, naming Global and Chernoff as additional parties to the divorce proceedings and asserting claims against them for conversion, conspiracy to convert, fraud, and conspiracy to defraud with respect to community monies earned by Susan or Global during the Ginsburgs' marriage. In his second amended petition, Dr. Ginsburg alleged, in part, as follows:

[Susan], GLOBAL, and CHERNOFF entered into an agreement whereby [Susan] and/or GLOBAL transferred large sums of community monies to CHERNOFF under the pretense of paying CHERNOFF for services rendered or to be rendered. CHERNOFF provided [Susan] and/or GLOBAL with false invoices for these so-called "services" and agreed to hold and hide said monies from [Dr. Ginsburg] until the divorce case between [Dr. Ginsburg] and [Susan] was completed.

Dr. Ginsburg asserted that Susan directed Global to make payments to Chernoff in an attempt to hide community assets from him.

The record indicates that, before Dr. Ginsburg filed his original petition in the instant case, Susan had filed a petition for divorce in November 2000. In December 2000, at Susan's direction, Global paid Chernoff a total of $757,000 based on invoices from Chernoff for work that Chernoff had not performed. In her deposition, Susan admitted that she had contacted representatives of Chernoff and had discussed her desire to "hide" these assets of her company to "protect" her business and her children in her impending divorce. Chernoff repaid the entire $757,000 to Global in March 2001. Subsequently, in April 2001, Susan dismissed her divorce action.

After Dr. Ginsburg filed his petition for divorce, Global, in November 2001, delivered checks totaling $149,799.88 to Chernoff as payment for services rendered by third-party vendors. Chernoff subsequently determined that Global did not owe these payments, and Chernoff deliv-

---

1. At the time that it signed the final decree of divorce in this matter, the trial court also severed Dr. Ginsburg's third-party claims against Chernoff from the divorce proceed-

ings and into the cause of action on appeal. Susan is not a party to this appeal.

2. Global is not a party to this appeal.

ered the $149,799.88 to its counsel to hold, pending an agreed division of the marital estate. In January and March 2002, Global sent Chernoff an additional $57,425 in prepayments for anticipated work. Chernoff presented summary judgment evidence indicating that, after it determined that it was not owed such funds, Chernoff returned the $57,425 to Global in April 2002. As remedies for his claims against Global and Chernoff for their allegedly "wrongful and tortious conduct," Dr. Ginsburg sought actual and exemplary damages.

In July 2002, Dr. Ginsburg and Susan reached a mediated settlement agreement dividing the marital estate and establishing their rights and responsibilities as joint managing conservators of their children.[3] As part of the agreement, Dr. Ginsburg received all of the $149,799.88 held in trust by Chernoff's counsel.[4] With respect to Dr. Ginsburg's pending claims against Chernoff, the settlement agreement read, in part, as follows:

> All claims, if any exist, and resulting damages therefrom, if any exist, being made in this litigation against [Chernoff] are hereby awarded in their totality to [Dr. Ginsburg]. [Susan] does *not* warrant or represent that any such claims are valid. [Susan]'s assignment of such claims, if they exist, against [Chernoff] is in the nature of a quitclaim assignment, without warranty. The claim(s), if any, against [Chernoff] shall be severed out of this case, allowing the parties to obtain a divorce.[5]

Chernoff subsequently filed a motion for summary judgment, based on traditional and "no evidence" grounds,[6] on all of Dr. Ginsburg's third-party claims. Dr. Ginsburg responded to Chernoff's motion and filed a third amended petition for divorce, in which he asserted additional third-party claims against Chernoff for unjust enrichment and breach of contract. Chernoff then filed a motion requesting that the trial court strike Dr. Ginsburg's third amended petition and deny him leave to amend his pleadings. Following a hearing, the trial court struck Dr. Ginsburg's third amended petition, granted Chernoff's motion for summary judgment on all of Dr. Ginsburg's third-party claims, and severed those claims into this cause.

## Summary Judgment

In his first issue, Dr. Ginsburg argues that the trial court erred in granting summary judgment for Chernoff on Dr. Ginsburg's third-party claims for conversion, conspiracy to convert, fraud, and conspiracy to defraud.

We may affirm the granting of a traditional summary judgment motion only when the record shows that the movant has disproved at least one element of each of the plaintiff's claims or established all elements of an affirmative defense to each claim. *See* Tex.R. Civ. P. 166a(c); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). A movant has the burden of showing that there is no genuine issue

---

**3.** The settlement agreement also resolved Dr. Ginsburg's third-party claims against Global, and these claims were subsequently non-suited.

**4.** With the exception of agreeing to turn over these funds, Chernoff was not a party to the settlement agreement.

**5.** The trial court's final decree of divorce, which incorporated the terms of Dr. Ginsburg's and Susan's mediated settlement agreement, awarded Dr. Ginsburg "[t]he totality of all claims, if any exist, and resulting damages therefrom, if any exist, that were brought by [Dr. Ginsburg] in this litigation against [Chernoff]."

**6.** *See* Tex.R. Civ. P. 166a(c), (i).

of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). Whether reviewing a traditional or "no evidence" summary judgment, we assume that all evidence favorable to the non-movant is true and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Id.* at 548–49; *Spradlin v. State*, 100 S.W.3d 372, 377 (Tex.App.-Houston [1st Dist.] 2002, no pet.). A no-evidence summary judgment motion may not properly be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. TEX.R. CIV. P. 166a(i); *Spradlin*, 100 S.W.3d at 377.

In its order granting summary judgment in favor of Chernoff, the trial court did not state the specific grounds for its ruling. Therefore, we will affirm the judgment of the trial court if any of the theories advanced by Chernoff in its motion for summary judgment is meritorious. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 435 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

 As one of the grounds in its motion for summary judgment, Chernoff argued that Dr. Ginsburg could not, as a matter of law, present any evidence of damages resulting from Chernoff's alleged participation in Susan's attempts to "hide" community monies. In support of this

ground, Chernoff argued that, because Dr. Ginsburg and Susan had agreed (1) to release each other generally "from any claims that either may hold against the other," (2) to non-suit Dr. Ginsburg's third-party claims against Global, and (3) to consider their settlement agreement a "fair and just division" of the marital estate, Dr. Ginsburg could not recover, from Chernoff, monies allegedly due to the community estate.[7]

Chernoff relies on *Cohrs v. Scott*, 161 Tex. 111, 338 S.W.2d 127 (1960), as support for its contention that, as a result of the settlement agreement, Dr. Ginsburg could not, as a matter of law, obtain a recovery against Chernoff because he could not present evidence of damages to himself or to the community. In *Cohrs*, a wife sued her husband for divorce and asserted third-party claims against Cohrs for participating in the husband's allegedly fraudulent use of community funds to purchase two Cadillac automobiles for the use of the husband's "woman companion." *Id.* at 128. The wife reached an agreement with the husband concerning the division of the marital estate, "subject to [her] claim against Cohrs," and the trial court subsequently granted an instructed verdict for Cohrs. *Id.*

The Texas Supreme Court affirmed the trial court's judgment and discussed its holding, in relevant part, as follows:

7. Although Chernoff presented this ground generally in its motion for summary judgment, it did not detail this argument, as set out above, until its reply to Dr. Ginsburg's response to the motion for summary judgment. However, Dr. Ginsburg did not except to the elaboration of this ground for summary judgment before the trial court, either in writing or at the summary judgment hearing. On appeal, Dr. Ginsburg does not contend that the trial court should not have considered this elaborated argument as part of the grounds for summary judgment. Rather, Dr. Ginsburg addressed this argument on its merits, and, therefore, so shall we. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342–43 (Tex.1993) ("An exception is required should a non-movant wish to complain on appeal that the grounds relied on by the movant were unclear or ambiguous.... Prudent trial practice dictates that such an exception should be lodged to ensure that the parties, as well as the trial court, are focused on the same grounds.").

Assuming a fraud, we are unable to find injury to [the wife] or to the community estate. After the above evidence had been developed, [the wife] entered into an agreement with [the husband] for an amicable division of their community estate, and judgment was entered thereon. *This judgment, from which no appeal has been taken, is presumed to have equitably adjusted and divided the estate of the spouses, taking into consideration all claims and counterclaims between them.* Under that agreement and judgment, [the wife] received substantial properties and [the husband] was left with substantial properties. Beyond any question, as between [the husband] and Cohrs, [the husband] was the principal actor as to [the property furnished to a third-party], and the fraud on [the wife].

There are cases which say that where a husband perpetrates a fraud upon the wife by the making of excessive gifts of community property to third persons with a fraudulent intent, she is entitled to recover against the property of the husband and against third possessors. But under the facts before us, the fraud having been initiated and carried out mainly by the husband, she must look primarily to him and his property to right the wrong. *The trial court here, in dividing the community property, and the parties in agreeing to such settlement, presumably compensated* [the wife] *for any loss she may have suffered on the purchase and disposition of the Cadillacs.*

This holding makes unnecessary serious questions as to whether the pleadings of [the wife] would support a judgment as to automobiles as a separate item of recovery.

*Id.* at 133 (footnote omitted) (emphasis added).

Dr. Ginsburg does not dispute that the holding in *Cohrs* has never been overruled and is still good law. Rather, he contends that, although the Texas Supreme Court "has abolished the interspousal claim of fraud against the community, it continues to recognize fraud against a third party," citing *Schlueter v. Schlueter,* 975 S.W.2d 584, 590 (Tex.1998). Dr. Ginsburg also contends that *Cohrs* does not apply to this case because (1) the holding in *Cohrs* was limited to the specific facts presented in that case; (2) under the terms of the settlement agreement here, he retained the right to pursue his claims against Chernoff; and (3) public policy favors settlement of disputes.

In *Schlueter,* the Texas Supreme Court considered whether a wife could pursue claims against her husband and father-in-law for fraud on the community. 975 S.W.2d at 585. The court reversed the trial court's judgment against the husband and held that, "[b]ecause a wronged spouse has an adequate remedy for fraud on the community through the 'just and right' property division upon divorce, we hold that there is no independent tort cause of action between spouses for damages to the community estate." *Id.* In reaching its holding, the court drew a distinction between its previous holdings recognizing a spouse's claim against another spouse for the recovery of personal injury damages, which are separate property, and a claim for improperly depleting community assets, which are community property. *Id.* at 587–88. However, the court specifically noted that its holding did not reach the issue of whether "separate and independent tort claims" asserted by a spouse against a third party for recovery of community assets should also be abolished. *Id.* at 590. Therefore, *Schlueter* did not reach the issue presented here and in *Cohrs.*

The Texas Supreme Court, in reaching its holding in *Cohrs*, did acknowledge that it was doing so "under the facts before [it]." 338 S.W.2d at 133. However, the circumstances presented here are closely similar to the facts presented in *Cohrs*. None of the parties has challenged the trial court's final decree of divorce, which incorporated Dr. Ginsburg's and Susan's settlement agreement concerning the division of the marital estate. Moreover, the basis for Dr. Ginsburg's claims against Chernoff was the allegation that Susan, acting through Global, had perpetrated a fraud or conversion on the community by attempting to hide community monies-in essence, that Susan was the party who had "initiated and carried out mainly" the alleged fraud and conversion. *See id.* We also note that, Dr. Ginsburg, as part of the settlement agreement, did retain his right to pursue his pending claims against Chernoff. However, in *Cohrs*, the court specifically noted that the spouses had "reached an agreement on a division of their property, *subject to* [the wife's] claim" against the third-party defendant. *Id.* at 128 (emphasis added). Thus, the present case does not differ substantively from *Cohrs*.

■ In regard to Dr. Ginsburg's argument that applying the *Cohrs* holding to this and similar cases will discourage the amicable settlement of divorce proceedings prior to the resolution of pending claims against third parties, we note that our holding is limited to the specific facts presented here, which are strikingly similar to those presented in *Cohrs*. We also emphasize that, in reaching its holding in *Cohrs*, the Texas Supreme Court recognized and reaffirmed the right of a spouse to seek recovery of damages "against the property of [the other spouse] and against third possessors" for fraudulent transfers of community property. *Id.* at 133. Moreover, as an intermediate appellate court,

we are constrained to apply the holdings of our superior courts, when applicable, regardless of public policy concerns. *See Lubbock County, Texas v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002); *see also Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964) ("After a principle, rule or proposition of law has been squarely decided by the Supreme Court, or the highest court of the State having jurisdiction of the particular case, the decision is accepted as a binding precedent by the same court or other courts of lower rank when the very point is again presented in a subsequent suit between different parties.").

The rationale and the holding expressed by the Texas Supreme Court in *Cohrs* are applicable to the facts presented here. Thus, we hold that, as a result of the settlement agreement dividing the marital estate, Dr. Ginsburg could not present evidence sufficient to raise a material fact issue concerning the element of damages as to his claims against Chernoff for conversion, conspiracy to convert, fraud, and conspiracy to defraud. Accordingly, we further hold that the trial court did not err in rendering summary judgment in favor of Chernoff on these claims.

We overrule Dr. Ginsburg's first issue.

### Amendment of Pleadings

■ In his second issue, Dr. Ginsburg contends that the trial court erred in granting Chernoff's motion to strike Dr. Ginsburg's third amended petition and to deny him leave to amend his pleadings to add third-party claims against Chernoff for breach of contract and unjust enrichment, as well as claims for loss of use and exemplary damages. As grounds for its motion, Chernoff argued that Dr. Ginsburg's third amended petition was filed fewer than seven days before the summary judgment hearing and constituted unfair

surprise and prejudice. *See* Tex.R. Civ. P. 63; *Goswami v. Metropolitan Sav. & Loan Ass'n,* 751 S.W.2d 487, 490 (Tex.1988). We review a trial court's decision to deny a party leave to amend his pleadings for abuse of discretion. *Hardin v. Hardin,* 597 S.W.2d 347, 350–51 (Tex.1980).

In his third amended petition, Dr. Ginsburg alleged that, beginning in 2001, Chernoff had breached an oral contract with Susan when it failed to pay outstanding commissions owed to her or to Global that, according to Chernoff's financial records, totaled $110,000. Dr. Ginsburg also alleged that Chernoff had been "unjustly enriched by its wrongful conduct" in allegedly assisting Susan in her attempts to hide community monies from him. Additionally, Dr. Ginsburg included claims for loss of use and for exemplary damages.

At the hearing on Chernoff's motion to strike, Dr. Ginsburg acknowledged that his third-party claims against Chernoff for breach of contract and unjust enrichment were new causes of action asserted for the first time within seven days from the hearing on the motion for summary judgment, but he argued that these claims did not constitute surprise because they were based on the same operative facts as alleged in his other third-party claims. Dr. Ginsburg also argued that loss-of-use damages are subsumed within the calculation of actual damages on a claim for conversion and that, in his second amended petition, he had previously sought recovery of exemplary damages.

With regard to Dr. Ginsburg's claim for breach of contract, we note that this claim was based on facts not previously alleged in any of Dr. Ginsburg's pleadings. Whether such facts were known to Chernoff or not, Dr. Ginsburg's amendment of his petition to include such a claim would have materially altered the nature of the facts in dispute, and we hold that the trial court did not abuse its discretion in striking this claim, as well as Dr. Ginsburg's equitable claim for unjust enrichment. Moreover, as we have held above, the trial court did not err in rendering summary judgment on Dr. Ginsburg's conversion and fraud claims. Thus, to the extent that Dr. Ginsburg's third amended petition sought additional or new elements of damages on any of his prior claims, we hold that the trial court did not abuse its discretion in striking such elements of damages.

Accordingly, we further hold that the trial court did not abuse its discretion in granting Chernoff's motion to strike Dr. Ginsburg's third amended petition and to deny Dr. Ginsburg leave to amend his pleadings and to add additional third-party causes of action against Chernoff.

We overrule Dr. Ginsburg's second issue.

### Conclusion

We affirm the judgment of the trial court.